PEOPLE v WALKER

Docket No. 266208. Submitted August 7, 2007, at Lansing. Decided September 6, 2007, at 9:00 a.m. Leave to appeal sought.

Darnell Walker, Jr., was convicted by a jury in the Ingham Circuit Court, Joyce F. Draganchuk, J., of possession of less than 25 grams of cocaine and possession of marijuana. The defendant, whose parole was revoked when he was bound over on the charges after a preliminary examination, appealed, alleging violation of the 180-day rule, MCL 780.131(1) and MCR 6.004(D)(1), violation of his constitutional right to a speedy trial, error in the granting of the defendant's first two defense attorneys' motions to withdraw as counsel, and that the trial court failed to address two issues raised in the defendant's motion to suppress evidence.

The Court of Appeals *held*:

1. The trial court erred in holding that the 180-day rule did not apply. The holding, which was based on Supreme Court and Court of Appeals precedent that held that the rule did not apply when the pending charge subjected the defendant to mandatory consecutive sentencing, such as when the defendant committed a crime while on parole, was erroneous because that precedent was overruled by the Michigan Supreme Court in an opinion with limited retroactive effect to cases pending on appeal in which the issue was raised and preserved, and this case was such a case.

2. The statutory trigger for the running of the 180-day period is notice to the prosecutor of the defendant's incarceration and a departmental request for final disposition of the pending charges. The holding that the 180-day rule did not apply must be reversed and, because the record is unclear regarding whether the formal notice requirements of MCL 780.131(1) and MCR 6.004(D) were satisfied, the matter must be remanded for such a determination.

3. If proper notice was received, the notice was not subsequently negated by defense counsel's statement in his motion to withdraw from representation that he had gotten the defendant a "favorable result" at the defendant's parole violation hearing.

4. There is no good-faith exception to the 180-day rule.

5. Criminal defendants are guaranteed a speedy trial without reference to a fixed number of days. The delay period commences at the time of the defendant's arrest. Because there was a total delay between the defendant's arrest and his trial of approximately 22½ months, the delay is presumed to be prejudicial and the burden shifted to the prosecution to rebut that presumption. A presumptively prejudicial delay requires an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial. In addition to the length of the delay, the court should consider the reasons for the delay, the defendant's assertion of the right to a speedy trial, and prejudice to the defendant. Consideration of those factors supports the trial court's conclusion that the defendant was not denied his right to a speedy trial.

6. There is no merit to the defendant's claim that a delay between the offenses and his arrest violated his due process right.

7. The trial court did not abuse its discretion in granting the defense counsel's motions to withdraw.

8. There were no unresolved claims related to the defendant's motion to suppress for the trial court to resolve.

Affirmed in part, reversed in part, and remanded.

1. CRIMINAL LAW — 180-DAY RULE.

There is no good-faith exception to the statute that provides that a prosecution against an inmate of a state correctional facility on an untried charge must be commenced within 180 days after the prosecutor receives notice of such incarceration from the Department of Corrections and a request for disposition of the charge (MCL 780.131[1]).

2. CRIMINAL LAW — SPEEDY TRIAL.

Criminal defendants are guaranteed a speedy trial without reference to a fixed number of days; the delay period commences at the time of the defendant's arrest; a delay of six months is necessary to trigger an investigation into a claim of denial of the right to a speedy trial; the burden is on the defendant to prove that he or she suffered prejudice where the delay was under 18 months; a delay that exceeds 18 months is presumed prejudicial and the prosecution has the burden of rebutting that presumption (US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; MCR 6.004[A]).

3. CRIMINAL LAW — SPEEDY TRIAL.

> A court determining if a pretrial delay violated a defendant's right to a speedy trial should consider the length of the delay, the reasons for the delay, the defendant's assertion of the right, and prejudice to the defendant.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Stuart J. Dunnings III*, Prosecuting Attorney, *Susan L. LeDuc*, Chief, Appellate Division, and *Joseph B. Finnerty*, Assistant Prosecuting Attorney, for the people.

*Lea Ann Hammers* for the defendant.

Before: WHITBECK, C.J., and TALBOT and ZAHRA, JJ.

PER CURIAM. Defendant Darnell Walker, Jr., appeals as of right from his jury convictions of possession of less than 25 grams of cocaine,[1] and possession of marijuana.[2] The trial court sentenced Walker, as a second-offense habitual offender,[3] to 34 to 180 months' imprisonment for the cocaine possession conviction, and, as a third-offense habitual offender,[4] to one year imprisonment for the marijuana possession conviction. Walker received one year's credit on his marijuana possession sentence for time served in jail. We affirm in part and reverse in part.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On July 13, 2003, Lansing police officers were dispatched to investigate a claim of shots fired. The description of a vehicle associated with the incident led

---

[1] MCL 333.7403(2)(a)(v).

[2] MCL 333.7403(2)(d).

[3] MCL 769.10.

[4] MCL 769.11.

police officers to Walker's residence. Walker was a parolee at the time. Lansing Police Officer Deborah Robinson conducted a pat-down search of Walker for weapons; she said that she felt a soft, lumpy mass in both front pockets of Walker's shorts. Officer Robinson then placed Walker in the backseat of her patrol car; Officer Robinson stated that Walker was not under arrest at the time and that he was not handcuffed. Officers subsequently searched the vehicle that was associated with the shooting incident and found a handgun.[5] Officer Robinson stated that she then placed Walker under arrest, explaining that she took him out of the patrol car, handcuffed him, and conducted a search incident to the arrest. Officer Robinson testified that she found money in Walker's left front pocket but did not find anything in his right front pocket.

Officer Robinson transported Walker to the Lansing Police Department detention center. Once there, because whatever she had originally felt in Walker's right pocket was no longer present when she searched him incident to the arrest, she checked the inside of her patrol car "to make sure nothing had either fell [sic] out or he had taken something out." Officer Robinson testified that her search of the vehicle revealed two bags in the backseat stuffed between the floorboard and the flex-glass partition. She stated that the bags contained "possible crack cocaine" and "possible marijuana." Lab tests confirmed that the bags did contain cocaine and marijuana. Officer Robinson testified that she knew the substances had not been there before she placed Walker in the backseat because she thoroughly checked her car before and after every shift, and because she had not transported anyone else before Walker during her shift.

---

[5] For reasons not apparent from the record, the prosecution did not pursue charges related to possession of the handgun.

A felony complaint and warrant for possession of less than 25 grams of cocaine and possession of marijuana were issued on October 30, 2003. Walker was arraigned on December 8, 2003. Attorney Frederick J. Blackmond, Jr., filed his appearance as defense counsel on December 18, 2003. On December 19, 2003, Walker signed a waiver of his statutory right to a preliminary examination within 14 days of arraignment.[6] A preliminary examination hearing was held on January 13, 2004, and the district court ordered that Walker be bound over on the charges in the complaint.

Following adjournments of trial pending several cancelled hearing dates for a motion to suppress, Blackmond moved to withdraw as defense counsel on July 9, 2004. Blackmond asserted that Walker, who had retained him, was not paying him, kept sending him letters, and was "again going against [his] advice." Blackmond indicated that Walker told him that if he did not do as Walker asked, Walker would sue him. The trial court granted Blackmond's motion to withdraw.

Attorney James Siver was appointed to represent Walker on September 24, 2004, and trial was again adjourned pending more defense motions. On January 26, 2005, Siver filed three motions: a motion requesting that the trial judge recuse herself from the case or allow defense counsel to withdraw; a motion to suppress; and a motion to dismiss. The trial court denied Siver's recusal motion, but allowed him to withdraw from representing Walker. Pursuant to the parties' stipulation, the trial court entered an order adjourning the hearings on the motions to suppress and dismiss, pending appointment of new counsel. However, trial was noticed for March 17, 2005.

---

[6] See MCL 766.4.

On March 15, 2005, attorney Henry Derrick Ethridge filed an appearance on Walker's behalf, and on March 17, 2005, the parties stipulated to again adjourn Walker's trial. The stipulation contained the following provision:

> DEFENDANT UNDERSTANDS that under MCR 6.004(D)(1), the "prosecutor must make a good faith effort to bring a criminal charge to trial within 180 days . . . ;" however, Defendant recognizes that his new counsel needs the opportunity to prepare for trial, as well as determine what pre-trial motions should be filed on Defendant's behalf.

An order adjourning trial until further notice was entered on that same day.

On April 19, 2005, a hearing was held on Walker's motions to dismiss and suppress. With respect to his motion to dismiss, Walker asserted that there had been an unreasonable delay since his arraignment in violation of the 180-day rule[7] and, alternatively, in violation of his constitutional right to a speedy trial.[8] Walker pointed out that his parole had been revoked on January 13, 2004, and that he had been detained in a state prison since that time. The prosecution argued that 200 days of the delay were attributable to Walker, that it had made a good-faith effort to bring the matter to trial, and that Walker failed to show any prejudice.

The trial court observed that the "reason behind [the] 180-day rule is so that the prosecutor can't take what would normally be concurrent sentences and turn them into consecutive sentences by waiting and waiting and waiting to proceed against a prisoner[.]" The trial court held that the 180-day rule did not apply because

---

[7] MCL 780.131; MCR 6.004(D)(1).

[8] US Const, Am VI; Const 1963, art 1, § 20.

Walker was on parole at the time of the offense and, if convicted, the sentences would be consecutive. The trial court also concluded that there was no violation of Walker's constitutional right to a speedy trial because the delays were partly his fault, making the total delay not attributable to Walker well under 18 months.

Walker also argued that the evidence against him should be suppressed because (1) the police unreasonably detained him on the basis of an informant's tip, (2) he was unlawfully arrested when he was placed in the backseat of the police car for 45 minutes without probable cause, and (3) his vehicle was searched without his consent or in the absence of an exception to the warrant requirement. The trial court held that the search of the vehicle was valid on the grounds of both consent and probable cause.

Following a three-day trial held May 31, 2005, through June 3, 2005, Walker was convicted and sentenced as stated above.

## II. THE 180-DAY RULE

### A. STANDARD OF REVIEW

Walker argues that the prosecutor violated the 180-day rule because the prosecutor was notified, at the latest, by the date of Walker's arraignment on December 8, 2003, that Walker was in the custody of the Department of Corrections; yet, his trial did not occur until approximately 18 months after his arraignment and nearly two full years after the alleged offenses.

This Court reviews de novo questions of statutory interpretation.[9] Nonconstitutional preserved error re-

---

[9] *People v Davis*, 468 Mich 77, 79; 658 NW2d 800 (2003); *People v McLaughlin*, 258 Mich App 635, 643; 672 NW2d 860 (2003).

quires reversal if a defendant establishes it was more probable than not that the error caused a miscarriage of justice.[10]

## B. ENTITLEMENT TO ASSERT A CLAIM UNDER THE 180-DAY RULE

The statutory 180-day rule provides, in relevant part, as follows:

> Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint.[11]

The purpose of the rule is to dispose of untried charges against prison inmates so that sentences can run con-

---

[10] *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).

[11] MCL 780.131(1). See also MCR 6.004(D)(1), which currently states:

> Except for crimes exempted by MCL 780.131(2), the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint. The request shall be accompanied by a statement setting forth the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time or disciplinary credits earned, the time of parole eligibility of the prisoner, and any decisions of the parole board relating to the prisoner. The written notice and statement shall be delivered by certified mail.

currently.[12] If the defendant is not brought to trial within 180 days after notice to the prosecution, the court loses jurisdiction and the charges must be dismissed with prejudice.[13]

It was previously held that the 180-day rule did not apply when the pending charge subjected the defendant to mandatory consecutive sentencing, such as when the person committed a crime while on parole.[14] That exception was overruled, however, in *People v Williams*,[15] with limited retroactive effect "to those cases pending on appeal in which this issue has been raised and preserved." Because this case was pending at the time and the issue was preserved, *Williams* applies here.[16] Therefore, the trial court erred in holding on the basis of the pre-*Williams* rule that the 180-day rule did not apply.

---

[12] *People v Williams*, 475 Mich 245, 252; 716 NW2d 208 (2006).

[13] MCL 780.133 states:

In the event that, within the time limitation set forth in [MCL 780.131], action is not commenced on the matter for which request for disposition was made, no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

See also MCR 6.004(D)(2), which currently states:

In the event that action is not commenced on the matter for which request for disposition was made as required in [MCR 6.004(D)(1)], no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information, or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

[14] *People v Smith*, 438 Mich 715, 717-718 (opinion by LEVIN, J.), 719 (opinion by BOYLE, J.); 475 NW2d 333 (1991); *People v Chavies*, 234 Mich App 274, 280; 593 NW2d 655 (1999); see MCL 768.7a(2).

[15] *Williams*, *supra* at 248.

[16] *Id.*

Under the *Williams* rule, the 180-day rule applies to any untried charge against any prisoner, with limited statutory exceptions for those offenses committed by incarcerated and escaped prisoners.[17] Here, because Walker was neither incarcerated nor an escapee at the time of the offenses, neither of the statutory exceptions applies. Thus, under *Williams*, the trial court erred in concluding that Walker was not entitled to assert his rights granted under the 180-day rule.

### C. NOTICE

For purposes of determining when the 180-day period began to run, Walker argues that the prosecutor was notified, at the latest by the date of his arraignment on December 8, 2003, that he was in custody. In *Williams*, the Court clarified and gave retroactive effect to its holding that "[t]he statutory trigger is notice to the prosecutor of the defendant's incarceration and a departmental request for final disposition of the pending charges."[18] It is unclear from the record whether or when the formal notice requirements of MCL 780.131(1) and MCR 6.004(D) were satisfied. The prosecution conceded below that it "was clearly aware at the time of the preliminary examination" (held on January 13, 2004) that Walker was being held by the Department of Corrections (DOC) at a state facility. However, on appeal, the prosecution asserts that "there was never any such notice sent or received in the case at bar." Accordingly, on remand, the trial court should make a factual determination whether and when the requisite notice was received.

If the requisite notice from the DOC to the prosecutor was not received, then the trial court should rule

---

[17] *Id.* at 254-255; see MCL 780.131(2).

[18] *Williams, supra* at 259.

that the 180-day period never began to run, and there was no violation of the statute. However, if the trial court discovers that such notice was properly received, the trial court should count days, starting from the original official notice to the prosecutor,[19] and determine which portion of the delay between the prosecutor's notice of Walker's status and the start of trial was attributable to the prosecutor and which portion was attributable to Walker.

Assuming proper notice was received, we address the prosecution's argument that Walker's status with the DOC was placed in doubt when his first attorney stated in his motion to withdraw from representation that he had gotten Walker a "favorable result" at Walker's parole violation hearing. But there is no evidence indicating that the prosecutor was ever informed, formally or informally, that Walker had been released from custody, and the prosecutor does not claim there was such notice. The prosecutor cites no statute or caselaw that supports the notion that the previously valid notice is negated if, after official notice, the prosecutor mistakenly concludes, because of the actions of Walker or Walker's counsel, that Walker was released from prison. And even if there were such a rule, mere mention of a "favorable result" at a parole hearing is a rather vague and unreasonable basis for a prosecutor to conclude that Walker has been released from custody. Thus, the prosecutor's notice of Walker's incarceration and pending charges was not subsequently negated by defense counsel's statement.

### D. GOOD-FAITH EXCEPTION

Again, assuming proper notice was received, we address the "good-faith exception" to the 180-day rule.

---

[19] See MCL 780.131; *Williams, supra* at 259.

The Michigan Supreme Court previously held that MCL 780.131 allowed the 180-day period to be exceeded as long as "apparent good-faith action is taken well within the period and the people proceed promptly and with dispatch thereafter toward readying the case for trial . . . ."[20] This decision was then incorporated into MCR 6.004(D),[21] which, before January 2006, read in pertinent part as follows:

> (1) The 180-Day Rule. Except for crimes exempted by MCL 780.131(2), the prosecutor must make a good faith effort to bring a criminal charge to trial within 180 days of either of the following:
>
> (a) the time from which the prosecutor knows that the person charged with the offense is incarcerated in a state prison or is detained in a local facility awaiting incarceration in a state prison, or
>
> (b) the time from which the Department of Corrections knows or has reason to know that a criminal charge is pending against a defendant incarcerated in a state prison or detained in a local facility awaiting incarceration in a state prison.
>
> \* \* \*
>
> (2) Remedy. In cases covered by subrule (1)(a), the defendant is entitled to have the charge dismissed with prejudice if the prosecutor fails to make a good faith effort to bring the charge to trial within the 180-day period. . . .

Effective January 1, 2006, MCR 6.004(D) was significantly rewritten, with all references to good-faith efforts on the part of the prosecutor removed.

While this "good-faith exception" has not been explicitly overruled, *Williams* held that MCR 6.004(D), as

---

[20] *People v Hendershot*, 357 Mich 300, 304; 98 NW2d 568 (1959).

[21] See MCR 6.004, 1989 staff comment.

it existed before 2006, "was invalid to the extent that it improperly deviated from the statutory language" of MCL 780.131.[22] There is nothing in the statute creating any "good-faith exception" to the 180-day limit. Given that MCR 6.004(D)(1) was amended, effective January 1, 2006, to make the rule conform to the 180-day rule set forth in the statute,[23] and given that the amendment removed any mention of good-faith action, it appears that *Williams* implicitly overruled the "good-faith" exception. Thus, on remand, if the trial court determines that the number of days attributable to the prosecutor exceeds 180, it should then dismiss the charges, regardless of any "good-faith efforts" on the part of the prosecutor.

### III. RIGHT TO A SPEEDY TRIAL

#### A. STANDARD OF REVIEW

Walker argues alternatively that his conviction must be vacated because his constitutional right to a speedy trial was violated. A determination whether a defendant was denied a speedy trial is a mixed question of law and fact.[24] This Court reviews the trial court's factual findings for clear error but reviews de novo constitutional questions.[25] When reviewing preserved constitutional error, this Court must determine whether the prosecution has established that the error was harmless beyond a reasonable doubt.[26]

---

[22] *Williams, supra* at 259.

[23] *Id.* at 258 n 5.

[24] *People v Gilmore*, 222 Mich App 442, 459; 564 NW2d 158 (1997).

[25] *Williams, supra* at 250; *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999).

[26] *Carines, supra* at 774.

### B. ANALYSIS

The federal and state constitutions, as well as Michigan law, guarantee criminal defendants a speedy trial.[27] The delay period commences at the time of the defendant's arrest.[28] "Michigan courts apply the four-part balancing test ... to determine if a pretrial delay violated a defendant's right to a speedy trial."[29] Under this test, a court should consider "(1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant."[30]

Unlike under the 180-day rule, criminal defendants are guaranteed a speedy trial without reference to a fixed number of days.[31] But a delay of six months is necessary to trigger an investigation into a defendant's claim of denial of the right to a speedy trial.[32] If the total delay was under 18 months, the burden is on the defendant to prove that he or she suffered prejudice.[33] A delay that exceeds 18 months is presumed prejudicial, placing the burden on the prosecutor to rebut that presumption.[34] A violation of a defendant's constitutional right to a speedy trial requires the trial court to dismiss the charges with prejudice.[35]

In assessing the reasons for delay, the court must

---

[27] US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; MCR 6.004(A); *Williams, supra* at 261; *Cain, supra* at 111.

[28] *Williams, supra* at 261.

[29] *Cain, supra* at 112; see also *Barker v Wingo*, 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972); *Williams, supra* at 261-262.

[30] *Cain, supra* at 112 (quotation omitted); see also *Barker, supra* at 530; *Williams, supra* at 261-262.

[31] *McLaughlin, supra* at 644.

[32] *People v O'Quinn*, 185 Mich App 40, 47-48; 460 NW2d 264 (1990).

[33] *Cain, supra* at 112.

[34] *People v Collins*, 388 Mich 680, 695; 202 NW2d 769 (1972); *Cain, supra* at 112.

[35] MCR 6.004(A).

examine whether each period of delay is attributable to the prosecutor or to the defendant.[36] Unexplained delays are charged against the prosecution.[37] Scheduling delays and docket congestion are also charged against the prosecution.[38]

Walker argues that some of the delays in his case were attributable to conflicts in the judge's and prosecutor's schedules, but fails to specifically delineate the date or length of these claimed delays. Walker also concedes that some of the delays in his case were attributable to conflicts in his various defense counsel's schedules, but argues that any delays attributable to his allegedly incompetent, court-appointed counsel should not be counted against him. However, this Court has held that delays caused by the adjudication of defense motions are attributable to the defendant.[39] Moreover, Walker fails to explain how any of his defense attorneys were so incompetent as to give rise to a violation of his constitutional right to effective assistance of counsel.[40] Indeed, the only facts referred to by Walker indicate that he actually contributed to any delay arguably attributable to defense counsel. Walker concedes that one attorney withdrew because of Walker's failure to pay attorney fees and that he "did not have a good attorney client relationship with either" of his two other attorneys.[41] Thus, there is no merit to Walker's

[36] *People v Ross*, 145 Mich App 483, 491; 378 NW2d 517 (1985).

[37] *Ross, supra* at 491; *People v Davis (After Remand)*, 129 Mich App 622, 625; 341 NW2d 776 (1983); *People v Bennett*, 84 Mich App 408, 411; 269 NW2d 618 (1978).

[38] *Williams, supra* at 263; *Cain, supra* at 113; *People v Jones*, 121 Mich App 484, 486; 328 NW2d 676 (1982).

[39] *Gilmore, supra* at 461.

[40] US Const, Am VI; Const 1963, art 1, § 20.

[41] Attorney Henry Ethridge filed a posttrial motion to withdraw on the ground of a breakdown in the attorney-client relationship, but the trial court denied his motion.

attempt to attribute to the state the portions of delay associated with his defense motions.

In ruling on Walker's speedy trial claim, the trial court concluded that "by my count we are not up to 18 months and we won't be till June 8th of '05. . . . [B]ut nevertheless, even if we were, there were substantial periods of time where the delays were caused by the defendant's own motions." The trial court then noted that significant portions of the delay were caused by the necessity to twice appoint new defense counsel for Walker. The trial court then held, "[S]o even leaving aside the fact we are not up to 18 months yet, there are periods of time that would take us substantially below that period that are attributable to the defendant that caused delay in this case."

We disagree with the trial court to the extent that it concluded that the 18-month, burden-shifting benchmark had not yet been met. From on the trial court's statement that the 18-month benchmark would not be met until June 8, 2005, it is apparent that the trial court was counting the delay period as having commenced at the time of Walker's December 8, 2003, arraignment. However, as mentioned, the delay period commences at the time of the defendant's arrest.[42] Walker was arrested on July 14, 2003; thus, the total delay in Walker's case between arrest and trial was approximately 22½ months, and the 18-month, burden-shifting benchmark was satisfied as of January 14, 2005. As of that date, the delay was presumed prejudicial and the burden shifted to the prosecution to rebut that presumption.[43] "[A] 'presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests

---

[42] *Williams, supra* at 261.

[43] *Cain, supra* at 112; *Collins, supra* at 695.

to determine whether a defendant has been deprived of the right to a speedy trial.' "[44]

Turning to the reasons for the delay, we conclude that the trial court did not clearly err in determining that significant portions of the delay were caused by the repeated adjournment of defense motions and the necessity to twice appoint new defense counsel for Walker. Additionally, on December 19, 2003, Walker signed a waiver of his statutory right to a preliminary examination within 14 days of arraignment. We also find it significant that in the March 17, 2005, stipulation to adjourn, Walker specifically indicated that despite the 180-day rule, he "recognize[d] that his new counsel needs the opportunity to prepare for trial, as well as determine what pre-trial motions should be filed." Because of this specific and intentional waiver of his known constitutional right,[45] we conclude that none of the additional delay after that point can be attributed to the prosecution. We also conclude that this waiver weighs against Walker with respect to the third factor—the defendant's assertion of the right.

Finally, with respect to the prejudice factor, the only prejudice of which Walker specifically complained was the loss of defense witnesses who observed his detention and arrest, and who resided in, or were transient residents of, the neighborhood. No such witnesses are actually named, and Walker does not explain how any witnesses would have assisted his defense given the charges against him and the circumstances. General allegations of prejudice are insufficient to establish that

---

[44] *Williams, supra* at 262, quoting *People v Wickham,* 200 Mich App 106, 109-110; 503 NW2d 701 (1993).

[45] See *Williams, supra* at 261.

a defendant was denied the right to a speedy trial.[46]
Therefore, we cannot conclude that the trial court erred
in ruling that Walker was not denied his right to a
speedy trial.

### IV. PREARREST DELAY

#### A. STANDARD OF REVIEW

Although not set forth in his statement of questions
presented, Walker appears to contend that reversal of
his convictions is also warranted on the ground of
prearrest delay. This Court need not consider issues
that are not properly set forth in the statement of
questions presented;[47] however, we nevertheless ad-
dress the merits of Walker's claim because it is an issue
of law for which the record is factually sufficient.[48]
Moreover, because a prearrest delay challenge impli-
cates constitutional due process rights, the failure to
raise the issue before the trial court does not preclude
appellate consideration of the issue.[49] Constitutional
errors are generally reviewed de novo;[50] however, we
review unpreserved constitutional claims for plain error
affecting the defendant's substantial rights.[51]

#### B. ANALYSIS

A delay between an offense and the arrest of the
defendant may violate the defendant's federal and state

---

[46] *Gilmore, supra* at 462; *People v Cooper,* 166 Mich App 638, 655; 421
NW2d 177 (1987).

[47] *People v Brown,* 239 Mich App 735, 748; 610 NW2d 234 (2000).

[48] *VanBuren Charter Twp v Garter Belt, Inc,* 258 Mich App 594, 632;
673 NW2d 111 (2003).

[49] *People v Crear,* 242 Mich App 158, 166; 618 NW2d 91 (2000).

[50] *Cain, supra* at 111.

[51] *Carines, supra* at 774.

due process rights.[52] The due process inquiry must consider the reasons for the delay as well as the prejudice to the defendant.[53] A defendant bears the burden of showing that the claimed prejudice actually and substantially affected the defendant's right to a fair trial.[54] An unsupported statement of prejudice by defense counsel is not enough,[55] nor are undetailed claims of loss of physical evidence, witness memory loss, or witness death.[56]

Other than reciting caselaw related to the issue of prearrest delay,[57] Walker fails to point to any facts supporting a delay between the commission of the offense and his arrest. Indeed, based on the undisputed fact that his drug possession offenses occurred virtually simultaneously with his arrest, there is no merit to his claim that a delay between an offense and his arrest violated his due process rights.

### V. MOTIONS TO WITHDRAW

#### A. STANDARD OF REVIEW

Walker argues that the trial court erred when it allowed his first two defense attorneys to withdraw on the eves of two trial dates. This Court reviews a trial

[52] *United States v MacDonald*, 456 US 1, 7; 102 S Ct 1497; 71 L Ed 2d 696 (1982); *United States v Lovasco*, 431 US 783, 787; 97 S Ct 2044; 52 L Ed 2d 752 (1977); *Cain, supra* at 109; *People v Bisard*, 114 Mich App 784, 788; 319 NW2d 670 (1982).

[53] *MacDonald, supra* at 7; *Lovasco, supra* at 789-790.

[54] *Crear, supra* at 166; *Cain, supra* at 108; *People v Adams*, 232 Mich App 128, 134-135; 591 NW2d 44 (1998).

[55] *People v Williams*, 114 Mich App 186, 202; 318 NW2d 671 (1982).

[56] *Crear, supra; Adams, supra* at 136-138; *People v Loyer*, 169 Mich App 105, 119; 425 NW2d 714 (1988).

[57] *Bisard, supra*, and *People v McIntire*, 232 Mich App 71; 591 NW2d 231 (1998), rev'd 461 Mich 147 (1999).

court's decision regarding a motion to withdraw for an abuse of discretion.[58]

B. ANALYSIS

Although framing this issue as a challenge to the trial court's granting of the attorneys' motions to withdraw, Walker's argument again focuses on his assertion that the "ensuing time delay should not be counted against" him. As concluded above, there is no merit to Walker's attempt to attribute to the state the portions of delay associated with his defense motions, especially in light of the fact that Walker concedes that one attorney withdrew because of Walker's failure to pay attorney fees and that he "did not have a good attorney client relationship with either" of his two other attorneys.

Moreover, we find no abuse of discretion in the trial court's granting of Blackmond's or Siver's motion to withdraw. An attorney who has entered an appearance may withdraw from the action only with the consent of the client or by leave of the court.[59] Unless ordered to continue to represent a client,[60]

> a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:
>
> * * *
>
> (3) the client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;

---

[58] *In re Withdrawal of Attorney*, 234 Mich App 421, 431; 594 NW2d 514 (1999).

[59] MCR 2.117(C)(2); *In re Withdrawal of Attorney, supra* at 431.

[60] MRPC 1.16(c).

(4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(6) other good cause for withdrawal exists.[61]

Blackmond indicated that Walker was continuously questioning Blackmond's ability to effectively represent him. Thus, the trial court did not abuse its discretion in granting Blackmond's motion to withdraw on the ground that there had been a breakdown in their attorney-client relationship.

Siver moved to withdraw as an alternative to his motion requesting the trial judge's recusal. Siver was concerned that his prior, allegedly adverse relationship with the trial judge could adversely affect Walker's interests. At the hearing on the motion, the prosecution suggested that because there was no conflict between Walker and the trial judge, the proper remedy should simply be Siver's withdrawal as counsel. The trial judge explained that she had no bias or prejudice against Siver and, after a brief discussion, Siver felt comfortable that they had "cleared the air." Nevertheless, the trial judge allowed Siver to withdraw because of the possibility that Walker might continue to question the judge's impartiality. We conclude that the trial court did not abuse its discretion in granting Siver's motion to withdraw in the interest of avoiding any later question about the integrity of the court's decisions solely based on Siver's continued representation of Walker.

[61] MRPC 1.16(b). Although the Michigan Rules of Professional Conduct do not expressly apply to a counsel's motion to withdraw, this Court has found them instructive when reviewing such motions on appeal. See *In re Withdrawal of Attorney, supra* at 432.

## VI. MOTION TO SUPPRESS

### A. STANDARD OF REVIEW

Walker argues that a remand is necessary because the trial court never resolved the first two issues in his motion to suppress evidence, i.e., whether the police unreasonably detained him on the basis of an informant's tip, and whether he was unlawfully arrested when he was placed in the back seat of the police car for 45 minutes without probable cause.

A trial court's decision whether to admit evidence is reviewed for an abuse of discretion.[62] But a preliminary question of law regarding the admissibility of evidence is reviewed de novo.[63]

### B. ANALYSIS

In response to Walker's argument that the evidence against him should be suppressed because his vehicle was searched without his consent or in the absence of an exception to the warrant requirement, the trial court held that the search of the vehicle was valid on the grounds of both consent and probable cause. In so ruling, the trial court stated:

> In this case, we have got a call going out of a red SUV, the license plate of the vehicle was given, which is very descriptive and unique in this case, the description of the vehicle being a red SUV, and a description of the two subjects. Well, the plate in fact matched the place [sic] that Officer Szczesny saw on the vehicle that the defendant was walking from. The description of the vehicle matched in that it was a red SUV; maroon, candy apple red, again, this is not something that conclusively has to be determined. It's a finding of probable cause. And the description of the

---

[62] *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

[63] *Id.*

yellow shorts, which is a rather unique kind of article of clothing, maybe unique is going too far, but not as common as blue jeans, yellow shorts were in fact being worn by the defendant.

Furthermore, the time frame of the call, the shots fired call, was dispatched at 2326, and it was 10 or 15 minutes later that Officer Szczesny pulled up to the Lowcroft address and saw the defendant walking from the car. That location was four or five miles from Jones Street. It's very consistent time frame and location wise with the shots fired call.

Again, there are discrepancies. Discrepancies do not defeat probable cause, but there are enough similarities and enough reason for the officers to be entitled to have searched this vehicle even without the consent.

Because the trial court ruled that there was probable cause to search the vehicle, Walker's detention while the search was being conducted was permissible.[64]

Moreover, in addressing Walker's motion for a new trial, the trial court stated that there was no merit to Walker's contention that the police had to establish the reliability of a known informant who called the police and reported that shots had been fired. And we find no error in this conclusion.[65] Therefore, there are no "unresolved claims" related to Walker's motion to suppress for the trial court to address.

We affirm the trial court's determinations on Walker's speedy trial claim, the motion to suppress, and the attorneys' motions to withdraw, but we reverse the trial court's decision that the 180-day rule did not apply and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

[64] See *People v Armendarez*, 188 Mich App 61, 66-73; 468 NW2d 893 (1991).

[65] See *id.* at 68.