*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KEVIN LYN BEVERLY,

Defendant-Appellant.

UNPUBLISHED
February 13, 2020

No. 344460
Washtenaw Circuit Court
LC No. 17-000760-FH

Before: FORT HOOD, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of witness intimidation, MCL 750.122, and extortion, MCL 750.213. The trial court sentenced defendant to consecutive terms of 5 to 15 years' imprisonment for the witness intimidation conviction and 8 to 20 years' imprisonment for the extortion conviction with credit for 292 days served. We affirm.

## I. FACTUAL BACKGROUND

In December 2012, the Washtenaw County Prosecutor charged defendant with aggravated stalking for repeatedly calling and sending text messages to his former wife, Nicole Beverly, in October 2012. In March 2013, defendant pleaded guilty to aggravated stalking. In July 2017, the Michigan Attorney General charged defendant with witness intimidation and extortion on the basis of the same factual circumstances to which defendant pleaded regarding his aggravated stalking conviction. During the jury trial, Nicole testified that defendant emotionally, verbally, and physically abused her during their marriage. As a result, Nicole divorced defendant in April 2011, and defendant was required to pay child support. Defendant subsequently accrued arrears of approximately $20,000.

In October 2012, defendant called and sent text messages to Nicole demanding her to state at an upcoming child support hearing that she no longer wanted to receive child support and that she did not expect defendant to pay the child support that she was owed. Defendant told Nicole that he would not go back to jail and that, if he did go to jail, he would harm her. Between approximately October 15, 2012 and October 25, 2012, defendant called Nicole between 30 to 100 times per day throughout the day and night. Defendant sent Nicole text messages in which he told

her to drop the child support case and suggested that, if Nicole failed to do so, the children would suffer. Nicole received between 10 to 15 text messages during that period. The jury found defendant guilty of witness intimidation and extortion.

## II. DUE PROCESS

Defendant contends that his constitutional right to due process was violated. Specifically, defendant contends that his convictions and sentences for extortion and witness intimidation violate his double-jeopardy protection against successive prosecutions and multiple punishments for the same offense, that the failure to charge defendant with these crimes constituted an unconstitutional prearrest delay, and that the prosecution was collaterally estopped from relitigating issues that were resolved when he was convicted of aggravated stalking. We disagree.

## A. DOUBLE JEOPARDY

Defendant first argues on appeal that his constitutional double-jeopardy protections were violated when he was prosecuted for the same conduct for which he previously pleaded guilty and served a five-year term of imprisonment. We disagree.

A double-jeopardy claim presents a question of law subject to de novo review on appeal. *People v Ream*, 481 Mich 223, 226; 750 NW2d 536 (2008); *People v Gibbs*, 299 Mich App 473, 488; 830 NW2d 821 (2013). Both the United States and Michigan Constitutions prohibit placing a defendant twice in jeopardy for a single offense. US Const, Am V; Const 1963, art 1, § 15; *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). These guarantees are substantially identical and should be similarly construed. *People v Davis*, 472 Mich 156, 161; 695 NW2d 45 (2005). "The purposes of double-jeopardy protections against successive prosecutions for the same offense are to preserve the finality of judgments in criminal prosecutions and to protect the defendant from prosecutorial overreaching." *People v Ford*, 262 Mich App 443, 447; 687 NW2d 119 (2004).

> The Double Jeopardy Clause affords individuals three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. The first two protections are generally understood as the "successive prosecutions" strand of double jeopardy, while the third protection is commonly understood as the "multiple punishments" strand. [*Smith*, 478 Mich 292, 299; 733 NW2d 351 (2007) (quotation marks and citation omitted).]

Michigan courts apply the *Blockburger*[1] same-elements test to determine whether charges constitute the "same offense" for purposes of double-jeopardy protections. *Nutt*, 469 Mich at 592. The *Blockburger* test "focuses on the statutory elements of the offense. *Id.* at 576 (quotation marks and citation omitted). "[O]ffenses do not constitute the 'same offense' for purposes of . . . double jeopardy if each offense requires proof of a fact that the other does not." *Smith* 478 Mich at 304,

---

[1] *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

314-315. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Nutt*, 469 Mich at 576 (quotation marks and citation omitted).

Defendant was convicted of aggravated stalking in 2013 and witness intimidation and extortion in 2018. The crime of stalking involves "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411h(1)(d); MCL 750.411i(1)(e); see also *People v Coones*, 216 Mich App 721, 725; 550 NW2d 600 (1996). A defendant commits aggravated stalking if, in addition to the above, the defendant's conduct (1) violates a restraining order, injunction, preliminary injunction, condition of probation, parole, pretrial release, or a condition of release on bond pending appeal, (2) includes making one or more credible threats against the victim, a member of the victim's family, or another individual in the victim's household, or (3) was a second or subsequent stalking offense. MCL 750.411i(2). See also M Crim JI 17.25.

Extortion involves a defendant (1) maliciously threatening, orally or in writing, (2) to accuse another of any crime or offense or to injure the person, property, mother, father, spouse, or child of that person, (3) with the intent to extort money or a pecuniary advantage or with the intent to compel the person to do or refrain from doing something against the person's will. MCL 750.213; *People v Harris*, 495 Mich 120, 128-129; 845 NW2d 477 (2014). The offense of witness intimidation proscribes an individual from preventing or attempting to prevent a witness from providing truthful information in an official proceeding. *People v Greene*, 255 Mich App 426, 438; 661 NW2d 616 (2003). The elements of witness intimidation are: (1) an individual was testifying or providing information at an official proceeding, (2) the defendant threatened or tried to intimidate the person testifying, (3) the defendant intended to discourage the person testifying from attending, testifying, or giving information at the proceeding, to influence the person's testimony, or to encourage the person to avoid legal process, withhold his or her testimony, or testify falsely, and (4) the defendant's actions involved committing or attempting to commit a crime or a threat to kill or injure the person testifying or his or her property. MCL 750.122(3). See also M Crim JI 37.4b.

The extortion offense contains elements not included in the aggravated stalking offense, specifically that a defendant threatens to harm another person with the intent to gain money, a pecuniary advantage, or to compel the person from doing something against their will. In contrast, there is no requirement pursuant to the aggravated stalking offense that the defendant intends to gain an advantage or intends to compel the recipient to do or refrain from doing something. Likewise, aggravating stalking requires a previous court order or previous stalking offense and repeated actions by the defendant that cause the recipient to feel threatened, frightened, or terrorized. Compare MCL 750.213, with MCL 750.411i(1)(e) and (2). Therefore, the extortion and aggravated stalking offenses each contain elements that the other offense does not require and do not constitute the same offense for purposes of double jeopardy. See *Smith*, 478 Mich at 318.

Similarly, the witness intimidation offense contains elements not included in the aggravated stalking offense. Witness intimidation contains the element that there is a person testifying in an official proceeding. Witness intimidation also involves a threat to kill or injure

another person to dissuade them from testifying. In contrast, aggravated stalking does not require that the victim was testifying at a court proceeding. Additionally, aggravated stalking requires repeated actions by the defendant that cause the victim to feel a certain way, whereas the witness intimidation offense does not require repeated actions or the testifying person to feel threatened, intimidated, or frightened. Compare MCL 750.122(3), with MCL 750.411i(1)(e), (2). Therefore, the witness intimidation and aggravated stalking offenses each contain elements that the other offense does not require and do not constitute the same offense for purposes of double jeopardy. See *Smith*, 478 Mich at 318.

Further, the subsequent prosecution of the witness intimidation and extortion offenses did not affect the finality of the judgment and defendant's plea regarding his aggravated stalking conviction. The witness intimidation and extortion charges were distinct from the aggravated stalking charge, proscribed different conduct, and involved a separate prosecutor. Additionally, there was no evidence that defendant suffered embarrassment, expense, anxiety, or insecurity as a result of the subsequent prosecution of the witness intimidation and extortion charges. See *People v Sturgis*, 427 Mich 392, 398-399; 397 NW2d 783 (1986). Because the offenses in this case were not the same offense as defendant's previous aggravated stalking conviction, and the subsequent prosecution did not constitute prosecutorial overreaching or disturb the finality of defendant's previous conviction, we conclude that the prosecution of the witness intimidation and extortion charges did not violate defendant's double-jeopardy protections. See *Smith*, 478 Mich at 299; *Ford*, 262 Mich App at 447.

## B. PREARREST DELAY

Defendant next contends that the delay of approximately five years between defendant's conduct in October 2012 and the prosecutor's charges in 2017 prejudiced defendant and impeded his ability to defend himself. We disagree.

The determination whether delay deprived the defendant of due process is reviewed de novo on appeal. *People v Reid (On Remand)*, 292 Mich App 508, 511; 810 NW2d 391 (2011). To a limited extent, procedural due-process guarantees protect a defendant against delay between the commission of an offense and arrest or indictment for that offense. *United States v Lovasco*, 431 US 783, 798; 97 S Ct 2044; 52 L Ed 2d 752, (1977); *People v Cain*, 238 Mich App 95, 109; 605 NW2d 28 (1999). The court must balance the defendant's interest in a prompt adjudication of the case against the state's possible interest in delaying prosecution. *Cain*, 238 Mich App at 108. To merit dismissal of a charge, a prearrest delay must have resulted in actual and substantial prejudice to the defendant's right to a fair trial and the prosecution must have intended a tactical advantage. *People v Patton*, 285 Mich App 229, 237; 775 NW2d 610 (2009). In order to demonstrate substantial prejudice, a defendant must show that his or her ability to defend against the charges was meaningfully impaired such that the outcome of the proceedings was likely affected. *Patton*, 285 Mich App at 237. An unsupported statement of prejudice by defense counsel is not enough to establish evidence of prejudice, nor are undetailed claims of loss of physical evidence, witness memory loss, or witness death. *People v Walker*, 276 Mich App 528, 546; 741 NW2d 843 (2007), vacated in part on other grounds 480 Mich 1059 (2008).

In this case, defendant did not demonstrate that his ability to defend against the witness intimidation and extortion charges meaningfully impaired his right to a fair trial. Contrary to

defendant's argument that the prosecution's delay resulted in a longer term of imprisonment for his aggravated stalking conviction, this delay was not a deliberate attempt to prejudice defendant or to gain a tactical advantage. Although defendant argues that he faced unfavorable sentencing consequences as a result of the prosecution's delay in charging defendant with witness intimidation and extortion, including that his sentence would have been shorter had the Washtenaw County Prosecutor brought the witness intimidation and extortion charges at the time that defendant was charged with aggravated stalking, an adverse impact on defendant's sentence is not sufficient to demonstrate substantial prejudice. See *People v Scott*, 324 Mich App 459, 465; 924 NW2d 252 (2018). Furthermore, there was no evidence that defendant would have received a different plea agreement in 2013 had the Washtenaw County Prosecutor charged with witness intimidation and extortion. Speculation regarding a plea agreement and an adverse effect on sentencing is not sufficient to demonstrate that the delay impacted defendant's ability to defend against the charges. See *id*. at 465-466.

To the extent that defendant argues that he lost his ability to defend against the witness intimidation and extortion charges by pleading guilty to the same factual bases in his aggravated stalking case, there was no evidence that the jury convicted defendant of witness intimidation and extortion merely because of his aggravated stalking conviction. The jury was presented with Nicole's testimony and evidence that defendant repeatedly called and sent her text messages from October 15, 2012 to October 25, 2012. Nicole testified that defendant threatened her in an attempt to impact her testimony at an upcoming child support hearing. The jury was instructed on the elements of witness intimidation and extortion and subsequently convicted defendant. Therefore, defendant did not demonstrate that he conceded the facts of this case in his guilty plea to aggravated stalking or that his due-process rights were violated.

Finally, defendant contends that he was deprived of his ability to go to trial in 2013 because he faced two separate prosecutions based on the same factual circumstances. However, defendant had the opportunity to proceed to trial for the aggravated stalking offense, but he chose to plead guilty. Defendant's argument that it was "possible" that he would have tried the case had the prosecutor charged him in 2012 with witness intimidation and extortion, in addition to the aggravated stalking charge, is speculative and does not demonstrate that he was denied the ability to present a defense in either case. Additionally, defendant did not present any evidence that the prearrest delay resulted in the loss of evidence, the unavailability of a witness, or the loss of an opportunity to cross-examine a witness. See *Walker*, 276 Mich App at 546; *People v Adams*, 232 Mich App 128, 135-137; 591 NW2d 44 (1998). Defendant did not demonstrate that his ability to defend against the charges was materially impaired, the outcome of the proceedings was affected, or the prosecution intended to gain a tactical advantage. See *Patton*, 285 Mich App at 237. Therefore, defendant did not demonstrate actual and substantial prejudice to his right to a fair trial, and he was not denied due process because of the prearrest delay. See *id*.

## C. COLLATERAL ESTOPPEL

Defendant next contends that the doctrine of collateral estoppel precluded the prosecution from charging defendant with witness intimidation and extortion because the issues of whether defendant prevented or attempted to prevent Nicole from testifying or threatened her with the intent to compel her to refrain from testifying were necessarily decided or actually litigated in the aggravated stalking proceeding. We disagree.

The applicability of collateral estoppel is a question of law subject to de novo review on appeal. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). The doctrine of collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the previous proceeding culminated in a valid and final judgment and the issue was actually and necessarily determined in that previous proceeding. *People v Brown*, 279 Mich App 116, 126; 755 NW2d 664 (2008). Generally, application of collateral estoppel requires (1) that a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) that the same parties had a full and fair opportunity to litigate the issue, and (3) mutuality. *Trakhtenberg*, 493 Mich at 48. Prosecutors are considered the same party for purposes of collateral estoppel because prosecutors are "creatures of the state." *People v Gates*, 434 Mich 146, 156; 452 NW2d 627 (1990). In a criminal case, the original sentence imposed following a conviction is a final judgment. MCR 7.202(6)(b)(*ii*). In the subsequent action, the ultimate issue to be concluded must be the same as that involved in the first action. *People v Schneider*, 171 Mich App 82, 86; 429 NW2d 845 (1988).[2] To be actually litigated, the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issues in the first action. *Gates*, 434 Mich at 156-157. The court reviews what has been pleaded and argued to determine if the issue was actually litigated. *Id*. at 156. To be necessarily determined in the first action, the issue in the subsequent action must have been essential to the first judgment. *Id*. at 158.

Regarding the determination of the issues, the issue during defendant's guilty plea was whether he repeatedly harassed Nicole. See MCL 750.411i. Defendant pleaded that he was previously convicted of stalking Nicole, he called and sent text messages to Nicole from October 15, 2012 to October 24, 2012, and he threatened Nicole. The ultimate issue regarding the witness intimidation charge was whether defendant prevented or attempted to prevent Nicole from providing truthful information in the child support hearing. See MCL 750.122(3); *Greene*, 255 Mich App at 438. Defendant did not plead in 2013 to any facts regarding Nicole's testimony or his intent to prevent her from testifying. Defendant's plea to calling Nicole, sending her text messages, and threatening Nicole did not necessarily determine that he was not guilty of preventing Nicole from testifying or threatening her with the intent to compel her to refrain from testifying. Therefore, the questions of fact essential to the jury's verdict that defendant was guilty of witness intimidation were not necessarily determined by defendant's plea to aggravated stalking. See *Gates*, 434 Mich at 158.

The ultimate issue regarding the extortion charge was whether defendant threatened to injure Nicole with the intent to compel her to refrain from testifying against her will. See MCL 750.213; *Harris*, 495 Mich at 128-129. The facts regarding whether Nicole was testifying in an official proceeding and whether defendant acted to prevent her from testifying were not at issue in

---

[2] Court of Appeals cases decided before November 1, 1990, are not binding. MCR 7.215(J)(1). Although this Court is not " 'strictly required to follow uncontradicted opinions from this Court decided prior to November 1, 1990,' those opinions are nonetheless 'considered to be precedent and entitled to significantly greater deference than are unpublished cases.' " *People v Bensch*, 328 Mich App 1, 7 n 6; 935 NW2d 382 (2019), quoting *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (emphasis omitted).

the aggravated stalking case, and the Washtenaw County Prosecutor did not litigate those issues. Defendant did not plead to any facts regarding those issues in his guilty plea to aggravated stalking. Thus, because the ultimate issues and factual questions regarding the extortion offense were not pleaded or argued in defendant's plea, the prosecutor did not have a full and fair opportunity to litigate the issues in this case. See *Trakhtenberg*, 493 Mich at 50; *Gates*, 434 Mich at 156-157.

Although this case involved the same parties and a different cause of action than the aggravated stalking case, the ultimate issues in this case were not necessarily decided or actually litigated on the basis of defendant's guilty plea, and the doctrine of collateral estoppel did not preclude the prosecution from charging defendant with witness intimidation and extortion. See *Schneider*, 171 Mich App at 86; *Gates*, 434 Mich at 165.

III. SENTENCING

Defendant next contends that the trial court abused its discretion by imposing consecutive sentences, and erred in calculating defendant's minimum sentencing guidelines range. We disagree.

A. CONSECUTIVE SENTENCING

Because the issue of a trial court's statutory authority to impose a consecutive sentence is a matter of statutory interpretation, this Court reviews de novo whether a trial court may impose a consecutive sentence. *People v Gonzalez*, 256 Mich App 212, 229; 663 NW2d 499 (2003). "A consecutive sentence may be imposed only if specifically authorized by law." *Id*. "[T]he decision to impose a consecutive sentence when not mandated by statute is reviewable for an abuse of discretion." *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016). A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). This Court reviews the proportionality of each sentence on its own merit, rather than reviewing the proportionality of the cumulative effect of multiple sentences. *Norfleet*, 317 Mich App at 663.

"Review of a discretionary decision requires that the trial court set forth the reasons underlying its decision." *Norfleet*, 317 Mich App at 664. The trial court must articulate reasons on the record to justify imposing a discretionary consecutive sentence. *Id*. at 664-665. "In this jurisdiction, concurrent sentencing is the norm." *People v Brown*, 220 Mich App 680, 682; 560 NW2d 80 (1996). The purpose of the consecutive sentence statutes is "to enhance the punishment imposed upon those who have been found guilty of more serious crimes and who repeatedly engage in criminal acts." *People v Smith*, 423 Mich 427, 445; 378 NW2d 384 (1985).

Under Michigan law, a trial court may impose a consecutive sentence only if there is statutory authority to do so. *People v Chambers*, 430 Mich 217, 222; 421 NW2d 903 (1988). A trial court has discretion to impose a consecutive sentence pursuant to MCL 750.122(11). The witness intimidation statute provides that "[t]he court may order a term of imprisonment imposed for violating this section to be served consecutively to a term of imprisonment imposed for the commission of any other crime including any other violation of law arising out of the same transaction as the violation of this section." MCL 750.122(11).

In this case, the trial court had discretion to sentence defendant to a consecutive sentence pursuant to MCL 750.122(11). The trial court sentenced defendant to terms of imprisonment for his witness intimidation and extortion convictions. Defendant's sentence for his extortion conviction was a term of imprisonment for the commission of a crime other than the witness intimidation offense. Although the witness intimidation and extortion convictions arose from the same factual circumstances of defendant's repeated phone calls and text messages to Nicole in October 2012, MCL 750.122(11) expressly provides that the trial court may impose a consecutive sentence when the convictions arise from the same transaction. MCL 750.122(11). Therefore, the trial court had discretion to impose a consecutive sentence under Michigan statutory law. See *Gonzalez*, 256 Mich App at 229.

Regarding the trial court's justification to support the consecutive sentence, the trial court articulated sufficient reasons on the record when sentencing defendant in support of its decision to impose a consecutive sentence. The trial court discussed the effect of defendant's conduct on Nicole and the children, including that they feared for their safety. Specifically, the trial court indicated that defendant "systematically over the past ten to fifteen years, maybe longer" terrorized Nicole and their children. The trial court also indicated that defendant's acts deprived Nicole of a significant amount of child support and impacted the way that she and the children lived their lives, which went beyond the nature and elements of the extortion offense. During the sentencing hearing, Nicole indicated that she and her children established response procedures at her place of employment and the children's schools for protection, checked locks and alarms for security, and lived in fear. Nicole also testified that she coordinated with the Washtenaw County Sheriff's Department to respond to 911 calls, diagram her home for SWAT response, and identify her and her children with their fingerprints and dental records in case defendant harmed them. Additionally, the trial court indicated that it effectively gave defendant credit for his five-year sentence for his previous aggravating stalking conviction by sentencing him for a minimum of eight years' imprisonment for his extortion conviction, whereas the trial court would have sentenced defendant to a 13-year minimum sentence to be served concurrently if he had been convicted of extortion at the time of his aggravated stalking conviction.

Viewing the sentencing transcript in context, the trial court articulated reasons with reference to the particular facts that supported imposing a consecutive sentence. The trial court emphasized the effect of defendant's conduct that subjected Nicole and the children to more than a decade of fear and terror, changed the way that they lived their lives by developing protection plans at school and work, and deprived Nicole of a significant amount of child support while she raised the children as a single parent. Defendant's conduct differed from the conduct proscribed by the witness intimidation and extortion offenses, which prohibited threats to a person to compel a person to do something against their will, by creating terror and causing Nicole and her children to alter their lives and routines. Therefore, the trial court adequately justified its decision to impose a consecutive sentence, and that decision was not outside the range of reasonable and principled outcomes. See *Babcock*, 469 Mich at 269; *Norfleet* 317 Mich App at 663-664.

## B. SENTENCING GUIDELINES

Finally, defendant argues that the trial court improperly scored Offense Variables (OV) 10 and 13. We disagree.

With regard to sentencing, a trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded by statute on other grounds as stated in *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019). An appellate court reviews de novo whether the facts, as found, adequately satisfy the scoring conditions prescribed by statute. *Id*. "This Court has also repeatedly held that a sentence is invalid if it is based on inaccurate information." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). If a sentence is within the appropriate guidelines sentence range, a defendant is entitled to resentencing only if there is a scoring error or if the trial court relied on inaccurate information. *People v Francisco*, 474 Mich 82, 88-89, 92; 711 NW2d 44 (2006).

## 1. OFFENSE VARIABLE 10

Defendant contends that his past relationship with the victim and the fact that he and the victim shared children did not establish a domestic relationship under OV 10. Defendant also contends that the trial court failed to make any findings regarding the victim's vulnerability. We disagree.

OV 10 relates to exploitation of a vulnerable victim. MCL 777.40(1).[3] " 'Vulnerability' means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c).

> Factors to be considered in deciding whether a victim was vulnerable include (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. [*People v Cannon*, 481 Mich 152, 158-159; 749 NW2d 257 (2008).]

The mere existence or absence of one of these factors, including a domestic relationship, does not automatically render the victim vulnerable. MCL 777.40(2); *Cannon*, 481 Mich at 159. Additionally, " '[e]xploit' means to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b).

The sentencing guidelines do not define "domestic" or "domestic relationship." However, we have determined that there must be a familial or cohabiting relationship to constitute a domestic relationship under MCL 777.40(1)(b). *People v Jamison*, 292 Mich App 440, 448; 807 NW2d 427 (2011). In this case, although defendant and Nicole were not cohabitating, they

---

[3] Although MCL 777.40 was amended by 2018 PA 652, effective March 28, 2019, the amendment is not pertinent to our analysis.

certainly had a familial relationship that supported the trial court's conclusion that a domestic relationship existed for the purposes of OV 10.

Although defendant and Nicole were divorced, the two had children together, which is a central fact that defendant sought to exploit. Indeed, the very testimony from Nicole that defendant sought to manipulate involved their children and was directly related to their domestic history. After their relationship ended in a divorce in April 2011, defendant called Nicole over 100 times and sent her approximately 10 to 15 text messages in a 10-day period in October 2012. Defendant demanded that Nicole state at an upcoming child support hearing that she no longer wanted to receive child support from defendant, and defendant stated that he would harm her if she continued to pursue the child support that he owed her. We note that Nicole was particularly susceptible to defendant's manipulation because of the history of abuse she experienced at his hands.

In other words, defendant and Nicole's past marriage and shared children support the conclusion that the two did have a domestic relationship for the purposes of MCL 777.40(1)(b). Defendant's relationship and connection to Nicole is exactly what made her vulnerable to his threats, and defendant sought to exploit that vulnerability. Therefore, the trial court correctly assessed 10 points for OV 10.

## 2. OFFENSE VARIABLE 13

Defendant lastly contends that the phone calls and text messages that formed the basis for his aggravated stalking, extortion, and witness intimidation offenses constituted one felonious act, rather than three or more crimes against the victim under OV 13. We disagree.

OV 13 addresses a continuing pattern of criminal behavior. MCL 777.43(1); *People v Gibbs*, 299 Mich App 473, 487; 830 NW2d 821 (2013). An assessment of 25 points is required when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). In determining the proper assessment of points under OV 13, "all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a); *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006). There is no requirement under MCL 777.43(1)(c) that the trial court may not consider multiple convictions arising from the same incident when assessing 25 points for OV 13. *Gibbs*, 299 Mich App at 487-488.

Defendant was convicted of witness intimidation and extortion in this case and was previously convicted of aggravated assault, which are classified as crimes against a person under the sentencing guidelines. See MCL 777.16l; 777.16f; 777.16t. Although the convictions arose out of the same factual circumstances, defendant called the victim over 100 times and sent her approximately 10 to 15 text messages in a 10-day period. There were several acts that took place over that time. See *People v Carll*, 322 Mich App 690, 704-705; 915 NW2d 387 (2018). These acts resulted in three separate convictions, which constituted a pattern of criminal activity. See *Gibbs*, 299 Mich App at 487-488. Therefore, the trial court did not err by assessing 25 points for OV 13 because defendant committed three crimes within a five-year period. *Id*. at 488.

The trial court did not err in calculating defendant's minimum sentencing guidelines range, and because the trial court imposed a sentence within the applicable minimum sentencing

guidelines range, resentencing is not required.  See *Francisco*, 474 Mich at 88-89, 92. See also *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008) (noting that "a sentence within the guidelines range is presumptively proportionate").

Affirmed.


/s/ Karen M. Fort Hood
/s/ Jane M. Beckering
/s/ Mark T. Boonstra