# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

NOSAKHARE ONUMONU,

Defendant-Appellant.

UNPUBLISHED
July 13, 2017

No. 329100
Wayne Circuit Court
LC No. 12-000687-01-FH

Before: FORT HOOD, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of first-degree murder under dual theories of premeditated murder, MCL 750.316(1)(a), and felony murder, MCL 750.316(1)(b). The trial court sentenced defendant to life imprisonment without parole. We affirm.

## I. FACTS AND PROCEEDINGS

Defendant was convicted of murdering 84-year-old Helen Klocek on March 2, 1999. Klocek ate breakfast at the Three Brothers Restaurant in the "three corners" area of Canton, Plymouth, and Westland around 11:00 a.m. on March 2. After finishing her meal, she left the restaurant alone. Klocek's body was discovered after 9:00 p.m. that night, in an alley behind a church on Joy Road in Detroit. The medical examiner determined that the causes of death were strangulation and blunt force trauma to her head, neck, and chest areas, which was likely inflicted by the killer stomping on her body. Klocek's white Ford Escort was discovered in the parking lot of Arbor, Inc., two blocks away from the location where her body was found. The driver's seat had been intentionally set on fire. The police found a Kevlar glove in the back seat of the Escort.

Gwendolyn Gardner learned of Klocek's death from a television news broadcast. Gardner notified the Detroit police that she thought she saw Klocek in her vehicle with a black male on March 2, 1999, at approximately 1:30 p.m. Gardner reported seeing a small white vehicle driving very slowly on Joy Road. The driver of the vehicle was an elderly white woman. The male occupant appeared to be pointing and giving the woman directions on where to drive. The police composed a computer-generated sketch of the suspect based on Gardner's description. Before the sketch was composed, Gardner was shown a different composite sketch of a suspect in a series of purse snatchings in Plymouth. Gardner stated that the man she saw in Klocek's vehicle resembled the Plymouth sketch.

-1-

Klocek's homicide remained unsolved until 2011, when the Detroit Police received funding to investigate cold cases. The Kevlar glove was submitted for DNA analysis and comparison of the evidence to the CODIS database. Three areas of the glove's lining contained DNA that matched defendant's DNA profile. In November 2011, defendant was charged with alternative counts of first-degree premeditated murder, first-degree felony-murder, and receiving or concealing stolen property (RCSP), MCL 750.535.

At the time defendant was arrested for the Klocek homicide in 2011, he was incarcerated for a prior unrelated conviction. His anticipated parole date was in early January 2012. His parole was suspended, and he remained incarcerated throughout the pretrial proceedings and trial, which was eventually held in July 2015. The pretrial proceedings involved three preliminary examination hearings. The district court initially declined to bind defendant over for trial on murder charges, but bound him over on the charge of RCSP. The RCSP charge was later dismissed because the limitations period for that offense had expired. The circuit court remanded the case to the district court for a second preliminary examination, at which the prosecutor presented evidence of a "mug shot" photograph of defendant taken by the Dearborn Heights Police in August 1999. The purpose of this photograph was to corroborate Gardner's description of the male suspect she saw in Klocek's vehicle. The district court again declined to bind defendant over for trial on the murder charges, believing that the evidence failed to establish a sufficient nexus between defendant and Klocek's death. The prosecutor appealed the district court's decision to the circuit court, which found that reasonable inferences arising from the evidence supported a finding of probable cause that defendant was responsible for Klocek's death. Therefore, the circuit court reinstated the first-degree murder charges. Trial was delayed while defendant pursued interlocutory appeals of the circuit court's decision to this Court, which were unsuccessful.

In January 2015, defendant was granted a third preliminary examination based on his recent discovery of the Plymouth sketch. Defendant argued that Gardner's identification of him was unreliable because she had previously stated that the suspect resembled the Plymouth sketch, which allegedly did not resemble defendant. The district court found that the evidence established probable cause to believe that defendant was responsible for Klocek's death, and therefore, bound defendant over for trial on the charges of first-degree murder. In July 2015, a jury found defendant guilty of first-degree murder under the alternative theories of premeditated murder and felony murder. The trial court denied defendant's posttrial motions for a new trial or a *Ginther*[1] hearing.

## II. SPEEDY TRIAL

Defendant first argues that he was denied his constitutional right to a speedy trial. "A defendant must make a formal demand on the record to preserve a speedy trial issue for appeal." *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999) (quotation marks and citation omitted). Defendant did not assert in the trial court that the delays in proceeding to trial violated his constitutional right to a speedy trial. Although defendant argues that his pretrial habeas

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

corpus motion should be considered an assertion of his right to a speedy trial, defendant only argued in that motion that he should be paroled from the prison term he was already serving. The motion did not mention defendant's right to speedy trial. Accordingly, the speedy trial issue is unpreserved.

"Whether defendant was denied his right to a speedy trial is an issue of constitutional law," which is reviewed de novo. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). But because this issue is unpreserved, defendant has the burden of establishing a plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

"Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial." *Williams*, 475 Mich at 261, citing US Const, Am VI; Const 1963, art 1, § 20; see also *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013). "In determining whether a defendant has been denied the right to a speedy trial, [courts] balance the following four factors: (1) the length of the delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Williams*, 475 Mich at 261-262. The period for analyzing a speedy trial claim commences at the arrest of the defendant. *Id*. at 261. "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Id*. at 262. "When the delay is less than 18 months, the defendant must prove that he or she suffered prejudice." *Rivera*, 301 Mich App at 193. A defendant's failure to promptly assert his right to a speedy trial weighs against his subsequent claim that he was denied the right. *People v Rosengren*, 159 Mich App 492, 508; 407 NW2d 391 (1987). Where the defendant has incurred a violation of his or her constitutional right to a speedy trial, the charges must be dismissed with prejudice. *People v Waclawski*, 286 Mich App 634, 664-665; 780 NW2d 321 (2009).

In assessing the reasons for delays, each period of delay is examined and attributed to the prosecutor or the defendant. *People v Walker*, 276 Mich App 528, 541-542; 741 NW2d 843 (2007), vacated in part on other grounds 480 Mich 1059 (2008), and overruled in part by *People v Lown*, 488 Mich 242 (2011). Unexplained delays are attributed to the prosecutor. *Waclawski*, 286 Mich App at 666. "Although delays inherent in the court system, e.g., docket congestion, are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Williams*, 475 Mich at 263 (quotation marks and citation omitted). Delays sought by defense counsel, whether counsel is retained or assigned, are ordinarily attributable to the defendant. *Vermont v Brillon*, 556 US 81, 90-91; 129 S Ct 1283; 173 L Ed 2d 231 (2009). Delay caused by an interlocutory appeal is not attributable to either party. *Waclawski*, 286 Mich App at 667. The time between dismissal and reinstatement of a charge is not counted against either party. *People v Wickham*, 200 Mich App 106, 111; 503 NW2d 701 (1993).

The total period from the issuance of the arrest warrant on November 15, 2011, to the first day of trial on July 20, 2015, is 1,343 days. A period of 248 days may be attributed to

defendant's motions or requests.[2] In addition, 518 days may be attributed to stays for interlocutory appeals, which are not attributable to either party. See *Waclawski*, 286 Mich App at 667. After subtracting these periods from the total delay period of 1,343 days, we are left with a net delay of 577 days. Because the total number of days (577) exceeds 18 months, albeit by only 37 days, prejudice is presumed. In this circumstance, the burden would normally fall on the prosecution to show that defendant was not prejudiced by the delay. See *Williams*, 475 Mich at 262; *Rivera*, 301 Mich App at 193. But because defendant did not preserve this issue by asserting his right to a speedy trial in the trial court, the prosecution did not have the opportunity to demonstrate that defendant was not prejudiced by the delays. Because defendant failed to preserve the issue, he has the burden of demonstrating a plain error affecting his substantial rights. See *Carines*, 460 Mich at 763-764. An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

There are two types of prejudice that a defendant can experience by delays in preceding to trial, prejudice to his person because of continued incarceration, and prejudice to the defense. *Williams*, 475 Mich at 264. Defendant contends that he was prejudiced because he was scheduled to be paroled from prison in February 2012, but he was never released from his incarceration. Although defendant experienced personal deprivation by his continued incarceration, the prejudice prong may still weigh against a defendant who is incarcerated for even longer periods if his defense is not prejudiced by the delay. See *id*. at 264. Defendant asserts that his "memory of the circumstances to challenge the State's inference in this wholly circumstantial case should be considered as a factor in terms of his ability to build his defense." However, defendant does not specify how his memory was affected by the delays between his arrest and trial, as opposed to the delay of over 12 years between the offense in 1999 and his arrest in 2011. The defense theory at trial was that defendant was misidentified as the perpetrator. Presumably defendant means that he cannot remember his activities on March 2, 1999, to establish an alibi or recall other exculpatory circumstances. This argument is not persuasive because defendant never asserted below—and there is no basis in the record for concluding—that defendant's memory of his whereabouts and activities on March 2, 1999 was any better when he was arrested in 2011 than when trial began in 2015. Defendant also asserts that his incarceration throughout the pretrial period prevented him from helping any of his attorneys obtain information in support of a defense. Again, however, defendant does not specify what evidence was lost or could not be obtained as a result of the delays between 2011 and 2015. The fact that defendant never asserted his right to a speedy trial in the trial court weighs against his general, unspecified claims of prejudice on appeal. Moreover, defendant actively managed his own defense to a significant degree, despite his continued incarceration

---

[2] This period includes (1) 92 days between December 2, 2013 and March 4, 2014, related to the appointment of new counsel, (2) 71 days between November 19, 2014 and January 29, 2015, after the circuit court granted defendant's motion to remand the case to the district court for a third preliminary examination, (3) five days from February 25, 2015 to March 2, 2015, due to the withdrawal of defendant's counsel, and (4) 80 days from May 1, 2015 to July 20, 2015, for an adjournment of trial to enable new counsel to prepare for trial.

from his previous conviction. Under the circumstances, defendant has not established that it is clear or obvious that he was prejudiced by the delay between his arrest and trial. Therefore, defendant has not shown that he was denied his right to a speedy trial.

## III. CIRCUIT COURT'S REINSTATEMENT OF THE MURDER CHARGES

Defendant next argues that the circuit court erred and improperly substituted its judgment for that of the district court when it reinstated the first-degree murder charges. A district court's ruling that alleged conduct falls within the scope of a criminal law is a question of law that is reviewed de novo for error, but a decision to bind over a defendant based on the factual sufficiency of the evidence is reviewed for an abuse of discretion. *People v Perkins*, 468 Mich 448, 452; 662 NW2d 727 (2003); *People v Hotrum*, 244 Mich App 189, 191; 624 NW2d 469 (2000). In reviewing a bindover decision, a circuit court must consider the entire record of the preliminary examination and may not substitute its judgment for that of the district court. *People v McKinley*, 255 Mich App 20, 25; 661 NW2d 599 (2003). The decision to bind over a defendant may only be reversed if it appears from the record that the district court abused its discretion. *Id.* This Court also reviews the district court's bindover decision de novo to determine if the district court abused its discretion. *People v Libbett*, 251 Mich App 353, 357; 650 NW2d 407 (2002). Thus, this Court gives no deference to the circuit court's decision. *People v Harlan*, 258 Mich App 137, 145; 669 NW2d 872 (2003). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Seewald*, 499 Mich 111, 116; 879 NW2d 237 (2016) (quotation marks and citation omitted). In *People v Feeley*, 499 Mich 429, 434; 885 NW2d 223 (2016), our Supreme Court reiterated that "[a] district court's decision regarding a bindover is reviewed for an abuse of discretion," while noting that a district court would necessarily abuse its discretion if it made an error of law.

Defendant challenges reinstatement of the first-degree murder charges on both procedural and substantive grounds. He asserts three procedural irregularities: (1) the prosecutor's failure to timely appeal the district court's order of dismissal; (2) the prosecutor's attempt to circumvent the 21-day appeal period by filing a Renewed Motion to Amend Information in lieu of an appeal of the district court's decision; and (3) the prosecutor's failure to properly serve him with the Renewed Motion to Amend. We reject each of these procedural challenges.

The circuit court properly determined that the prosecutor's appeal was timely filed. It is well settled that "[a] court speaks through written judgments and orders rather than oral statements or written opinions." *People v Jones*, 203 Mich App 74, 82; 512 NW2d 26 (1993). Although the appeal was filed more than 21 days after the district court's oral ruling, it was filed on December 7, 2012, within the 21-day period after entry of the district court's order on November 16, 2012. See MCR 1.108(1). Thus, the appeal was timely filed.

Defendant complains that the prosecutor failed to "obtain" a written order from the district court. However, defendant, as a party to the action, also could have obtained a written order from the court in accordance with the procedures set forth in MCR 2.602. See MCR 6.101(D) (the rules of civil procedure apply to criminal cases unless otherwise provided or a rule clearly applies to civil actions only). Moreover, the prosecutor did try to expedite the stalled proceedings by moving to amend the information one month after the district court's oral decision on June 15, 2012 dismissing the murder charges. That motion was not improper

because a prosecutor is permitted to seek review of the district court's decision by filing a motion to amend the information. See *People v Goecke*, 457 Mich 442, 458; 579 NW2d 868 (1998).

Defendant does not explain why the prosecutor's renewed motion to amend the information violated his rights, aside from stating that the prosecutor improperly served this motion on his former attorney instead of serving him personally. However, any error in service of this pleading was harmless because the circuit court never formally addressed the prosecutor's motion to amend. The circuit court indicated that it did not resolve this motion because it had previously remanded the case and "the appropriate resolution was to go get additional evidence" for the second preliminary examination, i.e., review the district court's decision after the second preliminary examination. The prosecutor properly filed a claim of appeal after the district court entered its order on remand. Defendant also implies that he was not served with the claim of appeal, but the trial court adjourned the appeal hearing on January 3, 2013, after defendant requested counsel, and defendant filed a brief before the hearing was continued on March 22, 2013, at which his new counsel appeared and argued in opposition to the appeal. Thus, any initial defect in service was cured and defendant was afforded his right to due process.

Defendant also argues that the circuit court improperly substituted its own judgment for that of the district court when it reversed the district court's ruling that the evidence at the preliminary examination failed to establish probable cause to believe that defendant committed the charged offense. "If a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover." *People v Wilson*, 469 Mich 1018; 677 NW2d 29 (2004), citing *People v Yost*, 468 Mich 122, 124 n 2; 659 NW2d 604 (2003). Accordingly, if sufficient evidence to support defendant's conviction was presented at trial and there are no other grounds for reversing his conviction, any error with respect to reinstating the murder charges is harmless. In any event, the circuit court's decision was not erroneous.

Defendant contends that the district court found that there was no probable cause linking him to Klocek's murder because any connection between him and Klocek's death depended on unreasonable inferences. However, the district court found that probable cause depended upon building an inference upon an inference, i.e., inferring that defendant was in the car with Klocek, and then inferring from that that defendant was responsible for Klocek's death. The district court did not indicate that either inference was unreasonable, but only concluded that the stacking of inferences was legally impermissible to establish probable cause. The distinction is significant because under the applicable standard of review, the circuit court reviews questions of law de novo. The question whether an inference may be based on another inference to establish probable cause is a question of law. In *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002), our Supreme Court rejected the principle "that an inference can not [sic] be built upon an inference to establish an element of the offense." The Court noted that although this principle had been articulated in *People v Atley*, 392 Mich 298; 220 NW2d 465 (1974), "virtually from the time of its publication, *Atley* was apparently felt to be unworkable and has been the subject of judicial redefinition by a series of decisions." *Hardiman*, 466 Mich at 424. The Court stated:

> Accordingly, when reviewing sufficiency of the evidence claims, courts should view all the evidence—whether direct or circumstantial—in a light most favorable to the prosecution to determine whether the prosecution sustained its burden. It is

for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. In compliance with MRE 401, we overrule "the inference upon an inference" rule of *Atley* and its progeny. [*Id*. at 428.]

*Hardiman* involved a challenge to the sufficiency of the evidence to support the defendant's conviction. *Id*. at 419. A conviction must be supported by sufficient evidence to prove the defendant's guilt beyond a reasonable doubt. *Id*. at 421-422. The standard for establishing probable cause is lower than the reasonable doubt standard. "The primary function of the preliminary examination is to determine whether a crime has been committed and, if so, whether there is probable cause to believe that the defendant committed it." *People v Henderson*, 282 Mich App 307, 312; 765 NW2d 619 (2009). "To establish that a crime has been committed, a prosecutor need not prove each element beyond a reasonable doubt, but must present some evidence of each element." *Id*. Accordingly, if an inference-upon-an-inference is permissible for establishing a defendant's guilt, it is also permissible for establishing probable cause. The circuit court properly ruled that the district court's decision was based on its erroneous belief that an inference could not be based on another inference. The circuit court also properly ruled that the inferences arising from the evidence in this case were sufficient to establish probable cause to believe that defendant was responsible for Klocek's death. It was the function of the trier of fact to determine if the asserted inferences were reasonable and to determine the weight to be accorded those inferences. Therefore, the circuit court did not err in reinstating the first-degree murder charges.

## IV. CIRCUIT COURT'S JURISDICTION OVER FELONY-MURDER CHARGE

Defendant next argues that the circuit court never properly obtained jurisdiction over the felony-murder charge. He contends that the circuit court's reinstatement of the murder charge pertained only to premeditated murder, not felony murder. Whether a court has jurisdiction over a matter is a question of law that is reviewed de novo. *People v Laws*, 218 Mich App 447, 451; 554 NW2d 586 (1996).

Our Supreme Court "has consistently held that the circuit court acquires jurisdiction of the case upon the making of a proper return from the magistrate before whom the defendant had been examined or waived examination." *People v Curtis*, 389 Mich 698, 707; 209 NW2d 243 (1973). The record does not support defendant's contention that the circuit court reinstated only the first-degree premeditated murder charge, and not the felony-murder charge. Moreover, premeditated murder and felony murder are merely different forms of the same offense, first-degree murder, MCL 750.316(1)(a) and (b). This is reflected in the principle that convictions of both first-degree premeditated murder and first-degree felony murder arising from the death of a single victim violate the constitutional double jeopardy protection against multiple punishments for the same offense. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Thus, when a defendant is convicted of both first-degree premeditated murder and first-degree felony-murder, the judgment of sentence must specify a single conviction of first-degree murder supported by two theories: premeditated murder and felony murder. *Id*. Accordingly, defendant's argument that the circuit court had jurisdiction over only the premeditated murder charge, and not the felony-murder charge, is without merit.

## V. SUPPRESSION OF EVIDENCE

Among the statement of questions presented in defendant's brief is an issue challenging the trial court's pretrial decision denying defendant's motion to suppress the Kevlar glove. However, defendant fails to address this issue in the body of his brief. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Because defendant does not address this issue in his brief, it has been abandoned. But, as the trial court observed, defendant's arguments regarding alleged irregularities in the chain of custody for the glove, as well as alleged inaccuracies in labeling the glove as left-handed and a discrepancy in the listed date the glove was received by an evidence technician were matters affecting only the weight of the evidence, not its admissibility. See *People v White*, 208 Mich App 126, 129-131; 527 NW2d 34 (1994).

## VI. SUFFICIENCY OF EVIDENCE

Defendant argues that the evidence was insufficient to support his conviction of first-degree murder, under either a theory of premeditated murder or felony murder. "Appeals regarding the sufficiency of the evidence are reviewed de novo." *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014). "In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *Id*. at 9. This Court "must not interfere with the jury's role" in deciding the weight of evidence and the credibility of witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748, amended 441 Mich 1201 (1992). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Hardiman*, 466 Mich at 428. "[I]f evidence is relevant and admissible, it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences." *Id.*

The elements of first-degree premeditated murder, MCL 750.316(1)(a), are: "(1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Because of the difficulty of proving an actor's state of mind, "minimal circumstantial evidence will suffice to establish the defendant's state of mind[.]" *Henderson*, 306 Mich App at 11. Premeditation and deliberation require sufficient time to allow the defendant to reconsider his actions, or in other words, sufficient time to "take a second look." *People v Abraham*, 234 Mich App 640, 656; 599 NW2d 736 (1999) (quotation marks and citation omitted). Factors relevant to the establishment of premeditation and deliberation include: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Id.* (quotation marks and citation omitted).

The circumstances surrounding Klocek's death support an inference that she was killed with premeditation and deliberation. The medical examiner identified multiple injuries contributing to her death. The perpetrator strangled her and delivered traumatic blows to her

head, neck, and chest, consistent with a stomping motion. The evidence of the multiple blunt force injuries in addition to strangulation supports an inference that the killer had the opportunity to premeditate and deliberate his actions, and was determined to continue his attack until Klocek was killed. The evidence that Klocek was taken to an isolated area further supports that the killer acted in accordance with a premeditated plan to kill her.

The evidence was also sufficient to support the elements of felony murder, MCL 750.316(1)(b). The elements of felony murder are: "(1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [MCL 750.316(1)(b)]." *Carines*, 460 Mich at 759 (quotation marks and citation omitted). "[L]arceny of any kind" is a predicate offense enumerated in MCL 750.316(1)(b). The elements of larceny are: "(a) a trespassory taking and (b) the carrying away (c) of the personal property (d) of another (e) with intent to steal that property." *People v March*, 499 Mich 389, 401; 886 NW2d 396 (2016). Witnesses testified that Klocek was protective of her purse, which she had with her when she left the Three Brothers Restaurant, but her purse was not found at the scene of the homicide or in her abandoned car. The jury could reasonably infer that the person who killed Klocek took her purse. The fact that the purse was never found does not negate this inference. The evidence showed that the driver's seat of Klocek's car was set on fire. This evidence supports an inference that the fire was started in an effort to conceal evidence of the perpetrator's guilt. It is reasonable to infer that the person who took the purse also would have discarded it to prevent its discovery. The evidence was sufficient to enable the jury to find beyond a reasonable doubt that Klocek was killed during the commission of a larceny.

Defendant primarily argues that the evidence was insufficient to prove his identity as the killer. Identity is an essential element of every crime. *People v Yost*, 278 Mich App 341, 354; 749 NW2d 753 (2008). Defendant concedes that Gardner's testimony and the DNA analysis of the Kevlar glove support an inference that he was in Klocek's vehicle. He argues, however, that there was no evidence connecting him to the location of the homicide or the missing purse. He asserts that his alleged presence in Klocek's vehicle is insufficient to connect him to the location of the murder and the discovery of Klocek's body. We disagree.

Although the prosecutor could not account for the approximate eight-hour gap between Gardner's sighting of defendant with Klocek in her car and the discovery of Klocek's body, a reasonable trier of fact could have found that the circumstantial evidence established defendant's identity as the killer. The prosecutor introduced testimony that Klocek was protective of her purse and kept it close to her, yet it was not with her when her body was discovered, nor was it inside her vehicle. The evidence indicated that defendant was the last person known to have contact with Klocek. Defendant was a stranger to Klocek, but Gardner's testimony placed him inside Klocek's vehicle shortly after she left the Three Brothers Restaurant. Gardner's testimony that Klocek was driving slowly and that defendant appeared to be directing her where to drive supported an inference that Klocek was not acting of her own volition when she was with defendant, and that defendant's presence in her vehicle was not consensual. Klocek's vehicle was discovered in a commercial parking lot, but there was no evidence that anyone saw Klocek alive after she was observed with defendant, or evidence that she attempted to contact the police or a family member between the time she was seen with defendant in the afternoon on the day of

her death and the discovery of her body later that night. Therefore, the jury could reasonably reject any suggestion that Klocek parted from defendant in safety, only to have the additional misfortune of falling victim to another person unconnected to defendant. Viewed in a light most favorable to the prosecution, the evidence was sufficient to allow the jury to find beyond a reasonable doubt that defendant was the person responsible for Klocek's death.

## VII. IDENTIFICATION TESTIMONY

Defendant next argues that the admission of Gardner's identification testimony violated his due process rights. Because defendant did not move to exclude Gardner's identification testimony before trial, or object to its admission at trial, this issue is unpreserved. Unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

To sustain a due process challenge based on an improper pretrial identification procedure, the defendant must demonstrate that the "identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). If a pretrial procedure was impermissibly suggestive, testimony concerning that identification is inadmissible at trial, unless an independent basis for the in-court identification can be established that is untainted by the suggestive pretrial procedure. *Id*. at 303.

Defendant does not expressly argue that Gardner was exposed to an unfairly suggestive pretrial identification procedure that unduly influenced her identification testimony. Rather, defendant advances various reasons for why he believes Gardner's identification testimony was not credible, and thus insufficient to establish his identity as the perpetrator. Defendant emphasizes that when Gardner was interviewed by the police in March 1999, she was shown a composite sketch of a suspect in a series of purse-snatchings in Plymouth. Gardner stated that the man she saw in Klocek's vehicle resembled the Plymouth sketch. Defendant maintains that the two sketches are not similar, and that Gardner's statement regarding the similarity of the Plymouth sketch should therefore be construed to mean that she could not have seen him in Klocek's car. Defendant emphasizes that Gardner failed to identify him at the 2012 preliminary examination, but three years later made a positive identification. He contends that the positive identification cannot be attributable to her memory, but instead must have come from seeing him at prior hearings. He also contends that her description does not match his actual appearance, specifically in regard to his complexion and eye color. Defendant further argues that the most reliable procedure for testing Gardner's identification would have been to compose a photographic lineup using his 1999 Dearborn Heights mug shot, and that the failure to use this procedure should have precluded Gardner's identification testimony at trial.

Defendant's arguments relate to the credibility and reliability of Gardner's identification testimony, which were matters for the jury to decide. See *Wolfe*, 440 Mich at 514-515. Defendant exercised the opportunity to thoroughly cross-examine Gardner on all aspects of her identification. Defendant questioned Gardner about the length of time she drove in proximity to Klocek's car and the relative positions of her van and Klocek's vehicle. He elicited Gardner's admission that she "glanced" downward into Klocek's car as she passed it on the left in her full-size van. Defendant also questioned Gardner about her description of the man as having a light complexion and light-colored eyes, and called the jury's attention to defendant's appearance.

The jury viewed the Plymouth sketch and the sketch that was composed from Gardner's description, and had the opportunity to consider whether their similarities or dissimilarities corroborated or undermined Gardner's identification. It was up to the jury to assess the accuracy of Gardner's identification, and to determine whether Gardner's testimony, in conjunction with the evidence of the glove, defendant's work and home locations, and the other evidence in the case were sufficient to establish defendant's identity as the perpetrator.

Defendant argues that, by the time of trial, Gardner was able to identify him only because she had seen him at the previous preliminary examinations. Defendant maintains that Gardner's inability to identify him at the first preliminary examination established that her identification of him at the third preliminary examination and at trial could only have been based on her observation of defendant at the first preliminary examination. Contrary to what defendant asserts, however, Gardner did not express an inability to identify him at the first preliminary examination. Rather, she was never asked to identify him at that preliminary examination.

Although the photographic lineup procedure suggested by defendant may have been an appropriate means of testing Gardner's identification, the omission of this procedure does not constitute a due process violation. The pertinent inquiry is whether, "in the light of the totality of the circumstances," the pretrial identification procedures "led to a substantial likelihood of misidentification." *Kurylczyk*, 443 Mich at 302. Defendant fails to satisfy this threshold. The failure to conduct a photographic lineup does not constitute a plain error affecting defendant's substantial rights.

## VIII. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that a new trial is necessary because he was denied the effective assistance of counsel. Although defendant moved in the trial court for a *Ginther* hearing, the trial court denied the motion, concluding that an evidentiary hearing was not necessary. Accordingly, our review of this issue "is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Defendant has the burden of establishing the factual predicate of his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant argues that defense counsel was ineffective for failing to adequately cross-examine witnesses, and failing to present or elicit exculpatory evidence. "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *Russell*, 297 Mich App at 716. "[F]ailure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Id.* (quotation marks and citation omitted).

Defendant argues that defense counsel was ineffective for failing to cross-examine witnesses regarding irregularities in the documentation for the Kevlar glove obtained from Klocek's vehicle. Defendant contends that "there was actually no glove discovered with Ms. Klocek's vehicle in March of 1999," but trial counsel failed to pursue this exculpatory theory to defendant's advantage. The glove was listed and described in Officer Babcock's report, dated March 8, 1999. According to defendant, irregularities in the glove's paper trail diminished the glove's evidentiary value, but trial counsel failed to adequately pursue this theory. Although defendant correctly notes that the glove was the only item of evidence that objectively associated him with the victim's vehicle, he overestimates the potential to diminish the glove's evidentiary value. Trial counsel did, in fact, attempt to cast doubt on the glove's provenance, and defendant has not demonstrated that counsel's attack on this evidence was prejudicially deficient.

Officer Babcock testified on direct examination that his entry of the "3-8-10" date in his report was a typographical error. He also stated that he was uncertain which side of the glove was the palm side, which explained his mistake in describing the glove as left-handed. The prosecutor evidently anticipated that Babcock's errors potentially detracted from the persuasive value of this evidence, and thus elicited Babcock's explanations on direct examination. Defendant contends that defense counsel failed to pursue "any alternate theory" regarding the glove, but he fails to offer a specific and plausible alternate theory. Defendant also criticizes counsel for failing to cross-examine Babcock regarding his "carelessness" with evidence and "the potential for tampering" the report. But the prosecutor had already elicited testimony regarding his errors on direct examination; thus, defendant has not overcome the presumption that defense counsel's failure to further pursue the matters on cross-examination was objectively reasonable, or shown that he was deprived of a substantial defense.

Officer Ellis explained on direct examination that he did not submit the glove for DNA analysis in 1999 because at that time the crime lab would not conduct DNA analysis of evidence without a suspect. On cross-examination, defense counsel elicited Ellis's admission that he submitted fingernail clippings and rape kit evidence for DNA analysis, despite not having a suspect. Defense counsel thus elicited testimony to support an inference that Ellis did not have a legitimate reason for not requesting DNA analysis of the glove. There is no basis for inferring that defense counsel overlooked opportunities to cross-examine Ellis in support of the defense theory.

Defendant also argues that defense counsel was ineffective for failing to cross-examine prosecution witnesses or introduce evidence that the police had investigated other suspects in relation to Klocek's murder. There is no basis for inferring that any of the witnesses could have provided a substantial defense. Defendant relies on information from police documents prepared in 1999. There is no evidence regarding these persons' availability to testify at trial, or indicating what information they could have given at the time of defendant's trial. Accordingly, the record does not support a finding that defense counsel's failure to call these witnesses was objectively unreasonable, or that calling the witnesses would have led to a more favorable outcome for defendant.

Defendant asserts that defense counsel failed to cross-examine witnesses to rebut evidence that he worked and resided near the Three Brothers Restaurant. However, defendant has not made an offer of proof disputing the prosecutor's evidence regarding the location of his

home and workplace on March 2, 1999. Defendant's failure to establish the factual predicate for this claim precludes relief. See *Hoag*, 460 Mich at 6.

Further, defendant has failed to demonstrate that remand for a *Ginther* hearing is necessary to develop an evidentiary record to support his claims of ineffective assistance of counsel. Defendant does not identify any relevant evidence that could be developed at an evidentiary hearing and has not submitted any affidavits or other evidence to demonstrate that additional witnesses could provide relevant evidence in support of his claim of ineffective assistance of counsel. Accordingly, we deny defendant's request to remand this case for a *Ginther* hearing.

IX.  MOTION FOR NEW TRIAL

Defendant lastly argues that the trial court erred in denying his motion for a new trial. We review a trial court's decision denying a motion for a new trial for an abuse of discretion. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001).

Defendant argues that he should be granted a new trial because "for all the foregoing reasons," his conviction resulted in a miscarriage of justice. This argument seeks relief under a cumulative error theory. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). "This Court reviews a cumulative-error argument to determine if the combination of alleged errors denied the defendant a fair trial." *People v Hill*, 257 Mich App 126, 152; 667 NW2d 78 (2003). Defendant has failed to establish any of his individual claims of error. Moreover, the only matters asserted by defendant that could reasonably have a cumulative prejudicial effect are Gardner's identification testimony and the Kevlar glove. These evidentiary items jointly established defendant's identity as the perpetrator. However, defendant has not established that either item was erroneously admitted.

Defendant also complains that he was convicted on the basis of circumstantial evidence, and inferences that he contends are not reasonable. This argument attacks the weight of the evidence. A new trial may be granted if a jury's verdict is against the great weight of the evidence. *People v Herbert*, 444 Mich 466, 475; 511 NW2d 654 (1993), overruled in part on other grounds in *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998). The test for whether a verdict was contrary to the great weight of the evidence is "whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *McCray*, 245 Mich App at 637.

Generally, "conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial." *People v Bosca*, 310 Mich App 1, 13; 871 NW2d 307 (2015), quoting *Lemmon*, 456 Mich at 643. Exceptional circumstances are required for a new trial to be granted based on witness credibility. Exceptional circumstances include testimony that contradicts "indisputable physical facts or laws," or that is "so inherently implausible that it could not be believed by a reasonable juror," or that was "seriously impeached in a case that marked by uncertainties and discrepancies." *Bosca*, 310 Mich App at 13, quoting *People v Galloway*, 307 Mich App 151, 167; 858 NW2d 520 (2014) (quotation marks omitted),

rev'd in part on other grounds 498 Mich 902 (2015). Defendant questions the credibility of Gardner's identification testimony, but does not identify any exceptional circumstances that would allow a court to substitute its view of her credibility for that of the jury. Moreover, Gardner's identification testimony was corroborated by the DNA evidence in the Kevlar glove. Accordingly, the jury's verdict is not against the great weight of the evidence. Thus, the trial court did not abuse its discretion in denying defendant's motion for a new trial.

Affirmed.


/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause