*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DWAYNE SYKES, JR.,

        Defendant-Appellant.

UNPUBLISHED
February 28, 2019

No. 338435
Genesee Circuit Court
LC No. 15-036716-FC

Before: K. F. KELLY, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to do great bodily harm less than murder, MCL 750.84; armed robbery, MCL 750.529; carrying a concealed weapon ("CCW"), MCL 750.227; and possession of a firearm during commission of felony ("felony-firearm"), MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of 80 to 120 months for the assault conviction, 210 to 480 months for the armed robbery conviction, and 40 to 60 months for the CCW conviction, and to a consecutive two-year term of imprisonment for the felony-firearm conviction. We affirm.

## I. FACTS

### A. THE SHOOTING

Defendant's convictions arise from his alleged armed robbery and shooting of Anthony Mont. On September 24, 2014, at approximately 10:20 p.m., Mont stopped and made a purchase at a party store in Flint, Michigan. Surveillance video from inside the store captured Mont paying for his purchase at the counter while the suspect, later identified by Mont from a photo array as defendant, stood nearby, carrying a drawstring backpack and wearing black pants with a white stripe on the leg, a grey hooded sweatshirt, and a red hat. After Mont left the store and entered his car, surveillance footage captured the suspect approaching the driver's side window of Mont's car. Mont testified that the perpetrator never spoke but pointed a short-barreled revolver at him. Mont grabbed the gun, and the perpetrator shot him once in the face. Under the impression that he was being robbed, Mont threw his wallet out of the car window and drove

himself to a nearby hospital. Mont survived the shooting but permanently lost vision in his left eye.

Less than two hours after the shooting, defendant was arrested in connection with an unrelated incident at the Corunna Road Bar, located approximately a quarter-mile away from the party store. The bartender, Jessica Bell, ejected defendant from the bar after he fell asleep and, upon being woken, became belligerent and refused to leave. Bell described defendant as wearing black pants, a grey sweatshirt, and red hat and carrying a backpack. Bell called 911 when she observed defendant outside the bar on surveillance video and suspected he was waving a gun in his hand. Responding officers found defendant in possession of a .38-caliber revolver that was missing its barrel. The gun contained two live rounds and one spent casing. It was later determined that bullet fragments recovered from Mont's wounds were consistent with a .38- or .357-caliber round, either of which could have been fired from the gun recovered from defendant. Defendant was placed under arrest and booked for CCW, felony firearm, and possession of a stolen firearm, as the revolver had been reported stolen. However, defendant was charged only with CCW and was released from custody.

Defendant did not become a suspect in Mont's shooting until December 2014, when police received information leading them to defendant's sister, Annie Alexander, and defendant's girlfriend, Haley Davis, both of whom identified defendant in the surveillance video from the party store. On December 3, 2014, defendant was arrested in connection with the shooting and was charged with assault with intent to do great bodily harm less than murder, armed robbery, CCW, and felony-firearm.

## B. PROCEDURAL HISTORY

Defendant's preliminary examination was delayed from December 18, 2014, until January 9, 2015, because defendant requested a corporeal lineup. Although defendant's request was granted, he subsequently refused to cooperate. At the conclusion of the preliminary examination, the district court bound defendant over with express reference to the assault, CCW, and felony-firearm charges but not to the armed robbery charge.

The trial court initially scheduled trial for May 13, 2015, with a motion cutoff date of April 6, 2015. The May 13 trial date, however, was adjourned on May 8, 2015, at the request of the prosecution. At a pretrial hearing held on May 18, 2015, defendant requested to be released on a jail tether and additionally indicated his intent to file a motion regarding the armed robbery charge. The trial court indicated defendant could renew his motion for bond after the trial court reviewed the preliminary examination transcript. Trial was rescheduled for August 5, 2015, with a motion cutoff date on August 3, 2015.

On June 22, 2015, defendant filed motions *in propria persona* seeking bond and appointment of new legal counsel. The trial court heard these motions on August 3, 2015. Defendant ultimately withdrew his motion for appointment of new legal counsel, while defense counsel stated he had filed a motion to strike the armed robbery count on the ground that defendant was not properly bound over on that charge. Defense counsel further stated he could proceed with trial on August 5, 2015; however, the prosecutor stated she was not prepared to begin trial because she was awaiting the results of DNA testing. On August 5, 2015, the trial

-2-

court heard defendant's motion to strike the armed robbery count and remanded the charge to the district court for further review. On September 1, 2015, the district court issued an amended bindover on all charges, including armed robbery.

On October 19, 2015, defendant filed a motion for production of certain evidence, including still photographs from the surveillance video. The trial court scheduled a hearing regarding this motion for October 26, 2015, and set trial for December 16, 2015. During the hearing, the trial court granted defendant's motion with respect to the still photographs and acknowledged that trial was unlikely to take place until early 2016. The trial court additionally set a $750,000 cash bond. Defendant filed another motion on November 12, 2015, seeking to quash the armed robbery count. The trial court denied this motion during a hearing held on November 23, 2015. During this hearing, trial was also rescheduled to begin on January 21, 2016.

During the pretrial hearing held on January 20, 2016, the prosecution requested an adjournment of trial due to the prosecutor's illness. Although defendant requested a different prosecuting attorney to avoid further delay, the trial court scheduled a hearing for February 1, 2016, to assess the prosecutor's condition. This hearing was adjourned until February 29, 2016, due to a conflict with the prosecutor's schedule. On this date, defense counsel indicated the parties were awaiting the results of ballistics evidence but that defendant wished to proceed to trial as soon as possible. The prosecutor stated she could be prepared for trial within two weeks. The parties again appeared for a pretrial hearing on March 14, 2016, agreed that the ballistics evidence was ready, and affirmed they were prepared for trial. The trial court scheduled trial to begin on June 24, 2016.

On May 9, 2016, defendant filed a motion *in propria persona* to suppress Mont's identification of him as the offender. The trial court responded to defendant in a letter advising him that, if he wished to proceed with the motion, he should "communicate this wish" to defense counsel. No such motion was pursued further. On June 17, 2016, trial was again adjourned until August 3, 2016, in order to accommodate the trial court's schedule. On August 2, the parties appeared for a pretrial hearing, and the prosecution requested a one-week trial adjournment due to witness unavailability. Although the trial court initially adjourned trial until August 11, 2016, it further adjourned trial until December 14, 2016, to accommodate a testifying witness's difficult pregnancy.[1]

On August 25, 2016, defendant filed a motion *in propria persona*, seeking dismissal of all charges due to the prosecution's failure to go forward with trial. Again, the trial court responded by advising defendant to consult with his attorney if he wished to file a motion to dismiss. No motion was filed, and the issue was never raised during the subsequent hearing on September 26, 2016. Beginning on December 12, 2016, the trial court adjourned trial several times in order to accommodate its own schedule. Ultimately, a pretrial hearing was held on January 9, 2017, during which defense counsel requested that trial be scheduled as soon as

---

[1] During a hearing held on September 26, 2016, the trial court and the parties discussed that trial had been adjourned until December to accommodate the witness's pregnancy.

possible. Trial was scheduled for and began on March 1, 2017, and defendant was convicted by a jury on all charges.

## II. ANALYSIS

## A. SPEEDY TRIAL

Defendant first contends that he was deprived of his constitutional right to a speedy trial, given the 27-month delay between his arrest on December 3, 2014, and trial beginning on March 1, 2017. We disagree.

In order to preserve a speedy trial issue for appellate review, a defendant must make " ' a formal demand on the record.' " *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999), quoting *People v Rogers*, 35 Mich App 547, 551; 192 NW2d 640 (1971). Citing to *Maples v Stegall*, 427 F3d 1020, 1027 (CA 6, 2005), defendant maintains that his motions for bond or release should be considered assertions of his right to a speedy trial. However, federal caselaw is not binding upon this Court, and defendant has cited to no Michigan authority recognizing a request for bond as the "functional equivalent" of a formal demand for a speedy trial. See *People v Bosca*, 310 Mich App 1, 75 n 25; 871 NW2d 307 (2015) (holding that although decisions of federal courts of appeals may be persuasive, they are not binding on this Court). Defendant also asserts that he filed *in propria persona* both a motion to dismiss the charges due to the prosecution's alleged failure to proceed to trial and a letter to the trial court asserting his right to a speedy trial. However, although the trial court directed defendant to consult with defense counsel regarding filing a motion to dismiss, no formal demand was ever submitted on the record. Nor can defendant's letter to the trial court be construed as a formal demand on the record. Because defendant never formally asserted any deprivation of his right to a speedy trial on the record, the trial court had no opportunity to make any factual findings on the record. Accordingly, we conclude this issue is unpreserved.

Generally, whether a defendant was denied his right to a speedy trial is a matter of constitutional law that this Court reviews de novo, while the trial court's factual findings are reviewed for clear error. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). When a constitutional issue is unpreserved, however, this Court limits its review to plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, while an error affects substantial rights if it was prejudicial such that it "affected the outcome of the lower court proceedings." *Id*. at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ." *Id*. at 763-764 (quotation marks and citations omitted).

"Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial." *Williams*, 475 Mich at 261, citing US Const, Am VI; Const 1963, art 1, § 20; see also MCL 768.1; MCR 6.004(A). In evaluating whether a criminal defendant's right to a speedy trial has been violated, courts must balance the following four factors: "(1) the length of the delay, (2) the reason for delay, (3) the defendant's assertion of the

right, and (4) the prejudice to the defendant." *Williams*, 475 Mich at 261-262. When a defendant's right to a speedy trial has been violated, the charges must be dismissed with prejudice. *People v Waclawski*, 286 Mich App 634, 664-665; 780 NW2d 321 (2009).

With respect to the first factor, the time period relevant to the speedy trial analysis commences at the arrest of the defendant. *Williams*, 475 Mich at 261. A defendant is not deprived of his constitutional right to a speedy trial after a delay of a fixed number of days. *Id*. However, "[w]hen the delay is more than 18 months, prejudice is presumed, and the prosecution must show that no injury occurred." *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013). In the present case, the lengthy delay of 27 months between defendant's arrest and his trial is presumptively prejudicial, and it is the prosecution's burden to demonstrate that defendant suffered no injury as a result.

In assessing the second factor, the reasons for the delay, each period of delay is examined and attributed to either the prosecution or the defendant. *People v Walker*, 276 Mich App 528, 541-542; 741 NW2d 843 (2007), vacated in part on other grounds 480 Mich 1059 (2008), and overruled in part on other grounds by *People v Lown*, 488 Mich 242; 794 NW2d 9 (2011). Unexplained delays are attributed to the prosecutor, while delays resulting from resolution of defense motions are attributed to the defendant. *Id*. at 542. "Although delays inherent in the court system, e.g., docket congestion, are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Williams*, 475 Mich at 263 (citation and quotation marks omitted). Delays due to witness unavailability do not weigh against either party. *People v Cain*, 238 Mich App 95, 113; 605 NW2d 28 (1999).

Certain delays in the present case are solely attributable to defendant. Defendant delayed the preliminary examination for 22 days between December 18, 2014, and January 9, 2015, by requesting a corporeal lineup but subsequently refusing to cooperate with the lineup. On October 19, 2015, defendant filed a motion seeking production of evidence relevant to his booking for the CCW charge and of still photographs taken from the surveillance video. After hearing defendant's motion on October 26, 2015, the trial court stated that trial would be unlikely to begin until 2016, and thereafter scheduled trial for January 21, 2016. Accordingly, this 94-day delay is also attributable to defendant. Although defendant filed a motion to quash the armed robbery charge on November 12, 2015, this motion was denied on November 23, 2015, and therefore had no impact on trial dates. Likewise, although defendant also filed a motion to suppress certain witness statements on May 9, 2016, and a motion to dismiss on August 25, 2016, there is no evidence demonstrating that these motions delayed the trials scheduled to begin on June 24, 2016, or December 14, 2016, respectively. In total, defendant was thus solely responsible for approximately 116 days (approximately four months) of delays.

Conversely, some delays are attributable solely to the prosecution. Specifically, on January 20, 2016, the prosecution requested an adjournment of the trial scheduled to begin the following day due to the prosecutor's illness. On February 9, 2016, the prosecution again requested an adjournment due to conflicts in the prosecutor's schedule. By February 29, 2016, the prosecution stated it was able to begin trial within two weeks, as both parties were awaiting the results of ballistics evidence. Accordingly, the prosecution was solely responsible for adjourning trial for 40 days between January 20 and February 29, 2016. Certain scheduling

delays are also technically attributable to the prosecution but are accorded only minimal weight. First, in order to accommodate its schedule, the trial court adjourned for 40 days the trial scheduled to begin on June 24, 2016, until August 3, 2016. Second, to again accommodate its schedule, the trial court adjourned for 77 days the trial scheduled to begin on December 14, 2016, until March 1, 2017. Thus, the prosecution is technically responsible for 157 days of delays (approximately five months), of which 117 days (approximately four months) are assigned a "neutral tint."

The vast majority of the delays, however, are either jointly attributable to both parties or weigh against neither party. Though trial was scheduled to begin on May 13, 2015, the prosecution requested an adjournment on May 12, 2018, while defendant indicated on May 18, 2015, that he intended to file a motion regarding the armed robbery charge. Accordingly, the trial court scheduled trial to begin 84 days later, on August 5, 2015. During a pretrial hearing held on August 3, 2015, the prosecution stated it was not prepared to begin trial, as it was awaiting the results of DNA evidence. On the same day, however, defendant filed a motion to dismiss the armed robbery charge.[2] Thus, the 29-day delay between August 3, 2015, and the filing of the district court's amended bindover on September 1, 2015, is equally attributable to both parties. On February 29, 2016, both parties indicated that they were awaiting the results of ballistics evidence, which ultimately led to the trial court scheduling trial to begin 116 days later, on June 24, 2016. Finally, the prosecution sought a one-week adjournment of the trial scheduled to begin on August 3, 2016, due to a testifying witness's unavailability. Likewise, on August 10, 2016, trial was again adjourned for 126 days until December 14, 2016, to accommodate a testifying witness's pregnancy. Accordingly, 355 days (approximately one year) of delays are attributable either to both parties or to neither party.

Viewing the various reasons for the delays in this case, we find that the prosecution and defendant share roughly equivalent responsibility for the delays. While defendant is responsible for nearly four months of delays, the prosecution is technically responsible for five months, four of which are to be given only minimal weight. Responsibility for an additional year of delays cannot be attributed exclusively to either party. Accordingly, the second factor of the speedy trial analysis weighs in favor of neither party.

Turning to the third factor of the analysis, we examine defendant's assertion of his right to a speedy trial. A defendant's assertion of his right to a speedy trial "is entitled to strong evidentiary weight" in determining whether a deprivation of that right has occurred. *Barker v Wingo*, 407 US 514, 531-532; 92 S Ct 2182; 33 L Ed 101 (1972). Conversely, a defendant's "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id*. at 532. As discussed above, defendant did not formally assert his right to a speedy trial before the trial court. Defendant has cited to no binding authority holding that a defendant's request for bond may be considered the "functional equivalent" of an assertion of the

---

[2] On August 3, 2015, the trial court also heard defendant's motions filed *in propria persona* seeking bond and new counsel. Because neither the prosecution nor the defense was prepared to begin trial at this time, we find that defendant's motions did not cause further delays.

right to a speedy trial. Although defendant moved *in propria persona* to dismiss the charges due to the prosecution's alleged failure to go forward with trial, the trial court advised defendant to consult with his attorney. Neither defendant nor defense counsel filed a motion or raised this issue before the trial court during the subsequent hearing. Finally, although defendant expressly asserted his constitutional right to a speedy trial in a letter sent to the trial court on February 8, 2017, trial began three weeks later, on March 1, 2017. A defendant's lack of diligence in failing to assert the right to a speedy trial until the eve of trial weighs heavily against the defendant. *Williams*, 475 Mich at 263, citing *People v Collins*, 388 Mich 680, 692-694; 202 NW2d 769 (1972). Accordingly, we find that this factor weighs against defendant's claim that he was deprived of his right to a speedy trial.

Our final consideration is whether defendant was prejudiced by the delay. Two types of prejudice may result from delays in proceeding to trial: prejudice to a defendant's person because of continued incarceration and prejudice to the defense. *Id*. at 264. Although a defendant may experience personal prejudice, this factor does not weigh in favor of the defendant if his defense was not prejudiced by the delay. *Id*.; see also *People v Chism*, 390 Mich 104, 115; 211 NW2d 193 (1973) ("[O]n the matter of prejudice to defendant because of the length of time before his trial, the most important thing is that there is no evidence that a fair trial was jeopardized by delay, although obviously 27 months of incarceration is not an insignificant personal hardship.").

Defendant contends that his lengthy pretrial incarceration prejudiced him by causing stress and depriving him of contact with family and friends, as well as employment opportunities. Defendant concedes that he "cannot show with specificity that witnesses were unavailable to him due to the delay, or that any necessary documentation was lost in the intervening time period." Rather, he maintains that his incarceration generally hindered his ability to assist in preparing the defense. As in *Williams*, although it is undoubted that defendant generally suffered personal hardship due to his lengthy pretrial incarceration, defendant has failed to establish with specificity that his defense was prejudiced in any manner. See *Williams*, 475 Mich at 264. Such "[g]eneral allegations of prejudice are insufficient to establish that a defendant was denied the right to speedy trial." *Walker*, 276 Mich App at 544. Consequently, there is no basis for finding that the delay in this case gave rise to any prejudice to defendant's defense. In balancing the appropriate factors, we thus conclude that defendant was not deprived of his constitutional right to a speedy trial.

## B. EVIDENTIARY CLAIMS

Defendant next contends that he was deprived of his due process right to a fair trial by the erroneous admission of irrelevant and unduly prejudicial evidence. Specifically, defendant challenges the introduction into evidence of a shotgun seized from the home of his sister, Annie Alexander, and of testimony that the revolver recovered from defendant at the Corunna Road Bar was reported stolen. We find defendant's arguments lacking in merit, as he cannot demonstrate that admission of the shotgun resulted in prejudice affecting his substantial rights. Nor, under the invited error doctrine, may defendant challenge on appeal the testimony, elicited by defense counsel, that the revolver was reported stolen.

A trial court's decision to admit or exclude evidence is ordinarily reviewed for an abuse of discretion, while preliminary questions of law such as whether a rule of evidence precludes

-7-

admission are reviewed de novo. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). However, when an evidentiary issue is unpreserved, our review is limited in scope to plain error affecting substantial rights. *Id.* Because defendant failed to object during trial to the evidence he now claims was erroneously introduced, these issues are unpreserved. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Our review is thus limited to plain error affecting substantial rights.

Defendant first argues that the shotgun recovered from Alexander's home was irrelevant because it lacked any connection to the charged crimes. Physical objects are admissible as demonstrative evidence only if they are relevant and probative. *People v Castillo*, 230 Mich App 442, 444; 584 NW2d 606 (1998). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; see also *People v Bass*, 317 Mich App 241, 259; 893 NW2d 140 (2016). Relevant evidence, however, may nonetheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. MRE 403. " 'Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury.' " *Castillo*, 230 Mich App at 444, quoting *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

We agree with defendant's position that the shotgun was not relevant to the charges in the present case. As this Court has previously held,

> [a] weapon similar to one allegedly used in the commission of a crime may be admitted as demonstrative evidence where substantial evidence attests to the similarity of the exhibit offered to the weapon allegedly used, there is no reasonable likelihood that the jury may fail to understand the demonstrative nature of the evidence, and the opposing party has ample opportunity for cross-examination regarding the demonstrative weapon. [*Id.* at 444-445.]

Similarly, "[w]eapons found in an accused's possession may be introduced into evidence without proof that they were the same weapons used by the accused in the crime, if the weapons found might have been used by the accused." *People v Kramer*, 108 Mich App 240, 253; 310 NW2d 347 (1981). In the present case, there is no logical nexus between the shotgun and the shooting. Mont described the gun used in the shooting as a small revolver with a short barrel. Thus, the shotgun was decidedly dissimilar to the weapon allegedly used in the commission of the charged crimes. No other evidence demonstrated that a shotgun either was used or was present during the shooting, nor did the prosecution advance any theory under which defendant's access to a shotgun was relevant. Because the shotgun was not relevant to the charged crimes, we find its admission was erroneous.

Although admission of the shotgun was erroneous, it did not impact defendant's substantial rights because defendant cannot demonstrate that the evidence was prejudicial such that it affected the outcome of trial. See *Carines*, 460 Mich at 763; see also *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (holding that reversal of a conviction based on erroneous admission of evidence is appropriate when "it is more probable than not that a different outcome would have resulted without the error"). Alexander testified that she owned

the shotgun, which she kept for personal defense, and that the police seized it from her home. Likewise, the detective responsible for investigating the shooting testified that there was no evidence that defendant owned or ever possessed the shotgun. From this testimony, the jury would have clearly understood that the shotgun was not connected either to the charged offenses or to defendant. See *People v Wilson*, 252 Mich App 390, 398-399; 652 NW2d 488 (2002) (finding there was no risk of undue prejudice when, following the admission of a rifle, the victim was recalled to reiterate that the rifle was not used during the assault). Additionally, the prosecution did not argue that the shotgun supported defendant's guilt of the charged offenses; indeed, the prosecutor never mentioned the shotgun evidence in either her closing or rebuttal arguments.[3] Accordingly, we conclude that the admission of the shotgun into evidence did not impact the outcome of the trial such that reversal is necessary.

Next, defendant challenges the admission of testimony by Officer Michael Ross that the handgun recovered from defendant at the Corunna Road Bar was reported as stolen. Specifically, Ross was questioned and testified as follows regarding defendant's arrest on September 25, 2014, outside the Corunna Road Bar:

> *Defense Counsel*: Okay, and what happens in [the Flint Police Department]?
>
> *Ross*: I fill out the Genesee County jail booking card with [defendant's] charges and he was booked into the jail.
>
> *Defense Counsel*: And what were his charges?
>
> *Ross*: At that time, it was CCW, felony firearm, and possession of a stolen firearm because it was reported as stolen out of the Burton Police Department.

Under the doctrine of invited error, "[a]ppellate review is precluded because when a party invites the error, he waives his right to seek appellate review." *People v Jones*, 468 Mich 345, 352 n 6; 662 NW2d 376 (2003). The record reveals that, irrespective of the admissibility of Ross's testimony, it was invited in direct response to a question posed by defense counsel. Defendant is therefore precluded from challenging as an evidentiary error the testimony expressly elicited by his own counsel. See *People v Beckley*, 434 Mich 691, 731; 456 NW2d 391

---

[3] Though not binding on this court under MCR 7.215(J)(1), *People v Drake*, 142 Mich App 357; 370 NW2d 355 (1985), is distinguishable from the present case. In *Drake*, this Court determined that the trial court erred by admitting evidence that the handgun used to commit the charged murder was stolen and that defendant possessed two additional, unregistered handguns that were unrelated to the murder. *Id*. at 359. The Court further held that the prejudicial impact of the error was not harmless. *Id*. at 360. However, whereas the guns in *Drake* unquestionably belonged to the defendant, the testimony in the present case made clear that the shotgun belonged to Alexander and was entirely unconnected to defendant, thereby mitigating any prejudice resulting from its admission. Further, unlike the present case, the prosecutor in *Drake* commented on the fact that defendant possessed stolen handguns. *Id*. at 359.

(1990) ("Defendant cannot now complain that the expert's testimony served to vouch for the complainant's credibility when he allowed and in fact drew out the response."). Additionally, assuming without deciding that admission of Ross's testimony amounted to error, we find that it did not affect defendant's substantial rights by impacting the outcome of trial. Ross's statement that the revolver discovered in defendant's possession was stolen was fleeting, and no other evidence referenced that the gun was stolen. In fact, the prosecutor clarified on the record that defendant was not necessarily charged with possession of a stolen firearm. Nor does the fact that the revolver was stolen necessarily imply that defendant was the one who stole it. We therefore conclude that reversal is not warranted on this ground.

## C. SUFFICIENCY OF THE EVIDENCE

In a pro se Standard 4 brief, defendant contends that the evidence was insufficient to sustain his conviction of armed robbery because no evidence establishes that a larceny occurred or was attempted. Defendant's argument lacks merit.

When considering a defendant's challenge to the sufficiency of the evidence supporting his conviction, this Court applies the de novo standard of review. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). "In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). All reasonable inferences must be drawn and all credibility determinations must be made in support of the jury verdict. *Id*. The prosecution "need not negate every reasonable theory consistent with innocence" but rather must prove the elements of the charged crime beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). " 'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *Id*., quoting *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). An appellate court is not to infringe upon the trier of fact's exclusive duty to determine what inferences may fairly be drawn and to determine the weight to be accorded to those inferences. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

The elements necessary to prove armed robbery are:

(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007); see also MCL 750.529; MCL 750.530.]

"[I]n the course of committing a larceny" is statutorily defined under MCL 750.530(2) as "acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight

-10-

or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." Our Supreme Court has held that, under this language, the prosecution need not demonstrate that a larceny was completed; rather, an attempted armed robbery with an incomplete larceny is sufficient to sustain a conviction. *People v Williams*, 491 Mich 164, 172; 814 NW2d 270 (2012).[4] Specifically, the Supreme Court reasoned that "the plainest understanding of the phrase 'in an attempt to commit the larceny' applies to situations in which a criminal defendant makes 'an effort' or undertakes an 'overt act' with an intent to deprive another person of his property, but does not achieve the deprivation of property." *Id*. at 174.

Defendant contends that the evidence was insufficient to prove that he attempted to commit larceny, as Mont never testified that defendant demanded or took any of Mont's possessions. We disagree. The prosecution presented sufficient circumstantial evidence that would permit a rational jury to infer that defendant attempted to rob Mont. Surveillance video captured defendant standing inside the party store watching Mont open his wallet to make a purchase. Defendant then left the party store, waited outside for Mont to leave, and followed him to his car. After Mont got into his car, defendant approached the driver's side window, drew a revolver, and pointed it at Mont. Although defendant did not speak, Mont testified that he assumed he was being robbed and threw his wallet out of the car window. Subsequently, defendant is visible on the surveillance video bending down as if picking something up from the ground. From this evidence, a reasonable trier of fact could infer, as did Mont, that defendant's purpose was to take Mont's property. Whether defendant actually took Mont's wallet or abandoned it in confusion or surprise is immaterial. The evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant, while in possession of a dangerous weapon, undertook an overt act of violence against Mont with the intent of depriving him of his property.

### D.  PROSECUTORIAL MISCONDUCT

Defendant also contends in his Standard 4 brief that, during closing argument, the prosecutor made an improper argument amounting to prosecutorial misconduct. Specifically, defendant challenges the prosecutor's argument that, after shooting Mont, defendant bent down to pick up Mont's wallet. Again, defendant's argument is unavailing.

Because defendant did not object to the prosecutor's remarks at the time they were made, this issue is unpreserved. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting the outcome of trial. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272. "This Court reviews claims of prosecutorial misconduct case by case, examining the remarks in context, to determine whether the defendant received a fair and impartial trial." *Aldrich*, 246 Mich App at 110. "Prosecutors are typically afforded great latitude regarding their arguments and conduct at

---

[4] To the extent defendant relies on the dissenting opinion in *People v Williams*, 288 Mich App 67; 792 NW2d 384 (2010) (GLEICHER, J., dissenting), in arguing that the prosecution was required to demonstrate that defendant *completed* a larceny, this position was expressly rejected by our Supreme Court in *Williams*, 491 Mich at 172.

trial." *Unger*, 278 Mich App at 236. Prosecutors may argue facts that are supported by evidence, as well as all reasonable inferences that may be derived from the evidence. *Id*. However, prosecutors must refrain from either expressing their personal opinion of a defendant's guilt or making denigrating or prejudicial remarks against a defendant. *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995).

Defendant objects to the portion of the prosecutor's closing argument in which she stated:

[I]f you watch the video closely, you'll see that kind of movement. You will see the defendant kind of struggling to get away and he goes back and he comes back up to the window again, and when he comes back up to the window, his left arm is out, and you can tell that he is shooting the victim. You watch as he runs behind the store and then he comes back again and *I believe, and this is just my belief, you are the ones who get to decide this, it looks as if the defendant is bending down when he returns to the car, he's bending down to pick up something and I believe it is at that time that it was the wallet*. [Emphasis added.]

This argument was properly premised on the evidence and represents the prosecutor's reasonable inferences drawn from the evidence. The prosecutor's comments accurately described the perpetrator's motions depicted in the surveillance video. Moreover, the prosecutor did not denigrate or argue her personal belief of defendant's guilt. On the contrary, she stated that she was merely offering her interpretation of the surveillance video and expressly reminded the jurors that they were "the ones who get to decide this." Furthermore, the trial court instructed the jury that the attorneys' "statements and arguments and commentary are not evidence," and it is a well-established principle that jurors are presumed to follow their instructions. See *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Accordingly, we conclude that the prosecutor's remarks were not improper.

## E. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Defendant claims on a variety of grounds that defense counsel provided ineffective assistance. Again, we find none of defendant's arguments persuasive. Initially, we note that none of defendant's claims of ineffective assistance are preserved, as he failed to move on any grounds for a new trial or request a *Ginther*[5] evidentiary hearing before the trial court. See *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Our review is therefore limited to errors apparent on the record. *Id*.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient insofar as it "fell below an objective standard of reasonableness under prevailing professional norms," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Vaughn*, 491 Mich 642, 669, 671; 821 NW2d 288 (2012). Defense counsel's performance falls below an objective standard of reasonableness if, under the

---

[5] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

circumstances, it is "outside the wide range of professionally competent assistance." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (quotation marks and citation omitted). Further, a defendant must overcome the "strong presumption that counsel's performance was born from a sound trial strategy." *Id*. "This Court does not second-guess counsel on trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017).

First, defendant argues that defense counsel was ineffective both in failing to object to admission of the shotgun into evidence and in eliciting Ross's testimony that the revolver was reported stolen. We disagree. First, it is possible that defense counsel may have strategically chosen not to object in an effort to avoid drawing attention to the evidence or testimony. See *People v Horn*, 279 Mich App 31, 40; 755 NW2d 212 (2008) ("Counsel may have believed that it was better not to draw the jury's attention to the fact that defendant never offered a statement to the investigating officers."). Second, even assuming that it was objectively unreasonable for counsel not to object, defendant cannot establish that the outcome of trial would have been different had counsel objected. With respect to the shotgun, the testimony clearly established that the gun belonged to Alexander and had no connection to the charged offenses. With respect to the testimony indicating that the revolver was reported stolen, this statement was brief, and no further reference to the gun's history was made during trial. Additionally, the mere fact that the revolver was reported stolen did not necessarily implicate defendant in its theft. Consequently, there is no reasonable probability that this evidence and testimony affected the outcome of defendant's trial, and we conclude that defense counsel did not fail to provide effective assistance.

Second, defendant asserts that defense counsel was ineffective in failing to object to the trial court's adjournment of the June 24, 2016, trial date until August 2, 2016, and to the prosecution's request for a one-week adjournment on August 2, 2016. Defendant, however, does not explain how he was prejudiced by these adjournments, let alone how the result of the proceedings would have differed had defense counsel objected. As we concluded above, defendant was not denied his constitutional right to a speedy trial. Although defendant endured personal hardship through his continued incarceration before trial, he acknowledged that the delay did not prejudice his defense in any particular manner. Likewise, defendant has not demonstrated that proceeding to trial more swiftly would have altered the outcome of trial.[6] Accordingly, defendant fails to establish the "factual predicate for his claim." *People v Putnam*, 309 Mich App 240, 248; 870 NW2d 593 (2015). We therefore conclude that defense counsel did not provide ineffective assistance by failing to object to these adjournments.

---

[6] To the extent defendant suggests that defense counsel provided ineffective assistance by failing to advance a motion to dismiss the charges premised on deprivation of defendant's right to a speedy trial, defendant also fails to establish a reasonable probability that he would have prevailed on such a motion had it been raised before the trial court. Defense counsel's failure to advance a meritless argument does not amount to ineffective assistance. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Third, defendant argues that defense counsel was ineffective in failing to object to the prosecutor's allegedly improper closing remarks regarding defendant bending down to pick up Mont's wallet. Because we have concluded that those remarks were not improper, defense counsel was not ineffective for failing to object. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance.").

Finally, defendant maintains that defense counsel was ineffective in failing to object to purportedly leading questions posed by the prosecutor to Mont regarding his belief that defendant was attempting a robbery. Ordinarily, it is improper practice to use leading questions on direct examination of a witness except as necessary to develop the witness's testimony. MRE 611(d)(1). However, the use of leading question does not warrant reversal unless it gives rise to some prejudice or denotes "a pattern of eliciting inadmissible testimony." *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001).

The prosecutor's challenged questions in the present case were not improper, as they were posed during her *redirect* examination of Mont. On cross-examination, defense counsel questioned Mont regarding the fact that the perpetrator never spoke or verbally demanded Mont's possessions. Defense counsel's questioning effectively enabled the prosecutor to clarify with Mont whether, notwithstanding the perpetrator's silence, he believed that he was being robbed. Defendant further fails to demonstrate prejudice resulting from the questioning, as Mont merely testified regarding his subjective impressions based on the perpetrator's uncontroverted actions. Nor does the record reveal a pattern on the prosecutor's part of eliciting inadmissible testimony. Under these circumstances, defense counsel's failure to advance such a patently futile objection does not amount to ineffective assistance. See *Ericksen*, 288 Mich App at 201. We thus reject defendant's claims of ineffective assistance of counsel.

## F. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Lastly, defendant contends that appellate counsel provided ineffective assistance by failing to raise in the brief on appeal those issues raised directly by defendant in his Standard 4 brief. We disagree.

As a preliminary matter, defendant cites legal principles pertaining to MCR 6.508, which governs evidentiary hearings in post-appeal motions for relief from judgment under Subchapter 6.500 of the Michigan Court Rules. Subchapter 6.500 provides the exclusive means of challenging a conviction by a defendant whose conviction is not subject to appellate review under subchapters 7.200 or 7.300 due to exhaustion of an appeal or lapse of the appellate filing deadline. Because the instant appeal is a direct appeal as of right under MCR 7.203(A), the procedures under MCR 6.508 are inapplicable.

Our review of claims of ineffective assistance of appellate counsel is governed by the same principles set forth above with respect to claims of ineffective assistance of trial counsel. *People v Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002). Appellate counsel's failure to raise an issue does not constitute ineffective assistance unless that failure amounts to a "sufficiently egregious and prejudicial" error. *People v Reed*, 198 Mich App 639, 646; 499 NW2d 441 (1993). Appellate counsel is not required to raise every conceivable issue and is

afforded discretion to "exercise reasonable professional judgment in selecting those issues most promising for review." *Id*. at 647. In the present case, defendant is incapable of demonstrating prejudice, as he was able to advance in his Standard 4 brief those issues not raised by appellate counsel. See *Pratt*, 254 Mich App at 430. We have addressed those issues and concluded they have no merit. Consequently, we find no basis for concluding that appellate counsel was ineffective for failing to raise those additional issues.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan
/s/ Michael F. Gadola